The STATE of Texas, Appellant,

v.

Tony EDMOND, Appellee.

No. 2–94–344–CR.

Court of Appeals of Texas, Fort Worth.

July 20, 1995.

Adrienne McFarland, Asst. Atty. Gen., Dist. Atty. pro tem., Austin, for appellant.

Michael Logan Ware, Fort Worth, for appellee.

Before CAYCE, C.J., and LIVINGSTON and CARR (Sitting by Assignment), JJ.

## OPINION

CARR, Justice.

This is a State's appeal from an order quashing an indictment.

Appellee Tony Edmond was indicted for the offense of official oppression.[1] The indictment included four separate paragraphs which each alleged a different manner and means by which Edmond committed the alleged offense. The trial court granted Edmond's motion to quash all four paragraphs of the indictment. In three points of error, the State now brings this appeal, which presents the following issues of first impression concerning the sufficiency of an "official oppression" indictment, *i.e.*, whether the trial court erred in finding the indictment defective for its failure to: (1) charge with further specificity the indictment terms "detain," "deny," "impede," "unwelcome sexual advances," and "request for sexual favors" in terms of manner and means; and (2) allege all of the statutory elements necessary to constitute a criminal offense under TEX.PENAL CODE ANN. § 39.02(a)(1) in that the questioned indictment does not charge that the alleged "mistreatment" was "unlawful" or that Edmond "knew" the purported misstatement was unlawful. We affirm.

■ In its first point of error, the State contends that the trial court erred in granting Edmond's motion to quash paragraphs one and three of the indictment, which in pertinent part charged that Edmond did:

---

1. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 39.02, 1973 Tex.Gen.Laws 883, 953, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3674 (current version at TEX.PENAL CODE ANN. § 39.03 (Vernon 1994)). All references in this opinion are to the former official oppression statute (section 39.02) unless otherwise indicated.

then and there intentionally subject H.M. Nielson to detention that the defendant knew was unlawful, and the defendant was then and there acting under color of his office and/or employment as a public servant, namely, a police officer for the City of Wichita Falls, Texas.

. . . .

then and there, knowing his conduct was unlawful, intentionally deny and impede H.M. Nielson in the exercise and enjoyment of a right and/or privilege, to wit: the right and/or privilege to obtain access and use of the motor vehicle under the care, custody and control of the said H.M. Nielson, and the defendant was then and there acting under the color of his office and/or employment as public servant, namely, a police officer for the City of Wichita Falls, Texas.

The official oppression statute applicable at the time of this offense is set out in former section 39.02 of the Texas Penal Code. For the first paragraph of the indictment, the State relied on subsection (a)(1) which provides that: "A public servant acting under color of his office or employment commits an offense if he: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful." In the third paragraph of the indictment, the State relied on subsection (a)(2) of section 39.02 which provides that: "A public servant acting under color of his office or employment commits an offense if he: (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful."

In his motion to quash, Edmond urged that paragraphs one and three of the indictment were defective because of their failure to give him notice of the manner and means and/or to further describe or define the way in which he was alleged to have criminally "detained," "denied," or "impeded" the complaining witness.

In *Daniels v. State*, 754 S.W.2d 214 (Tex. Crim.App.1988), the court of criminal appeals set out the following guidelines and foundational principals for testing the vagueness of an indictment:

An accused's right to notice of the accusation against him is premised upon constitutional principles, both federal and state. The Sixth Amendment to the Constitution of the United States provides in part:

"In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation. . . ."

Article I, Sec. 20 of the Texas Constitution states in part:

"(In all criminal prosecutions the accused) shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof."

There are also pertinent Code of Criminal Procedure provisions. *See* Articles 21.02(7), 21.03, 21.04, 21.11 and 21.12, V.A.C.C.P.

The defendant is thus entitled to notice of the acts or omissions he is alleged to have committed.

When considering a motion to quash, it is insufficient to say the accused knew with what offense he was charged; rather the question presented is whether the face of the instrument sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense. The motion to quash should be granted where the language in the charging instrument concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed.

While all essential elements of an offense must be alleged in the indictment, an indictment drafted in the language of the statute creating and defining an offense is ordinarily sufficient.

It is a rare exception when an indictment drafted in the language of the penal statute is legally insufficient to provide an accused with notice of the offense charged.

Although an indictment which tracks the language and terms of the statute is ordinarily sufficient, if the statutory language is not completely descriptive, so that particularity is required to afford the defendant notice as required, merely tracking

the language of the statute may be insufficient.

The State, however, is not required to plead evidentiary facts which are not essential to provide the required notice to the accused. In *Thomas* [*v. State*, 621 S.W.2d 158 (Tex.Crim.App.1980) ] (opinion on rehearing), we stated that usually when the terms and elements in the indictment are statutorily defined, the definitions are essentially evidentiary and need not be further alleged in the indictment. Thus, unless a fact is essential for notice to the accused, the indictment need not plead the evidence relied upon by the State.

*Id.* at 217–18 (citations and footnotes omitted).

In *Cook v. State*, 824 S.W.2d 334 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd), the court discussed these constitutional and statutory requirements vis-a-vis a criminal indictment as follows:

The offense should be charged in plain and intelligible words, with such certainty that a presumptively innocent person such as the accused will know what he will be called upon to defend against, and to enable him to plead any resulting judgment to bar further prosecution for the same offense.

*Id.* at 336–37 (citation omitted).

In the case-at-bar, the operative "acts" attributed to Edmond in paragraphs one and three of the indictment are "detention," "deny," and "impede." Although the indictment alleges that these acts were "unlawful," the indictment does not specify how or why the alleged acts of "detaining," "denying," or "impeding" were in fact, unlawful. For example, the indictment does not state to which statutory definition of "unlawful" it refers.[2] In *Neloms v. State*, 740 S.W.2d 104 (Tex. App.—Amarillo 1987, no pet.), the court reasoned as follows:

When a term is defined in the statute, it need not be further alleged in the indictment. *Thomas v. State*, 621 S.W.2d 158, 161 (Tex.Crim.App.1980) (opinion on re-

hearing). However, when an indictment contains a necessary allegation of an act or omission by the accused which, by statutory definition, may be performed in more than one way, but fails to specify which of the statutory definitions is relied upon, the indictment is subject to a motion to quash. *Russell v. State*, 710 S.W.2d [662] at 663 [ (Tex.App.—Austin 1986, pet. ref'd) ]; *see Thomas v. State*, 621 S.W.2d at 160.

In this case the indictment pled the statutory element of threatening "to harm another by an unlawful act." Unlawful is defined in Texas Penal Code Annotated section 1.07(a)(36) (Vernon 1974) as meaning conduct which is "criminal or tortious or both." Thus, the statute fails to cure the failure in the original indictment to allege the specific facts as to the manner and means, or the specific "unlawful act," whether crime or tort or both, which appellant was alleged to have committed.

*Id.* at 106.

Police officers "detain," "deny" and "impede" citizens on a daily basis as an integral part of their job. If the State alleges these otherwise innocent or routine activities were, in this instance, criminal, the State must further allege the manner and means by which Edmond performed these acts. "[I]f it is the manner and means by which an act is done that makes an otherwise innocent act a criminal offense, it is necessary to allege facts showing the manner and means which makes the act a criminal offense." *Giddings v. State*, 816 S.W.2d 538, 541 (Tex.App.—Dallas 1991, pet. ref'd) (citing *Posey v. State*, 545 S.W.2d 162, 163 (Tex.Crim.App.1977)).

The State's reliance on *Daniels*, in which the court stated that a defendant in a delivery of controlled substance case is not entitled to a further description of the alleged "constructive delivery," is not controlling in our case. Unlike the case-at-bar, in *Daniels* it was not the manner or means of the defendant's act or omission that made otherwise innocent activity criminal. *Daniels* involved

**2.** Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1.07(a)(36), 1973 Tex.Gen.Laws 883, 889, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3590

(current version at TEX.PENAL CODE ANN. § 1.07(a)(48) (Vernon 1994) (defining the term "unlawful")).

delivery of a controlled substance, an *inherently* criminal activity. The case-at-bar involves allegations of detaining, denying, and impeding by a police officer which are generally *non*-criminal activities. Edmond is therefore entitled to further specification in order to properly prepare to defend against the charges and in order to plead any resulting judgment to bar further prosecution for the same offense.

Likewise, in *Karnes v. State*, 873 S.W.2d 92 (Tex.App.—Dallas 1994, no pet.), also relied upon by the State, the defendant was charged, *inter alia*, with penetrating the sexual organ of a child younger than fourteen years of age with the sexual organ of an animal. The court of appeals held that the indictment need not describe the type of animal or the specific details by which appellant caused the sexual organ to penetrate the victim. *Id.* at 100. Since *Karnes* did not involve "otherwise innocent activity" it is also inapposite to the case-at-bar.

We conclude that neither paragraphs one nor three of this indictment adequately notify Edmond of the charges he must defend against nor sufficiently enable him to plead any resulting judgment to bar further prosecution for the same offense. The trial court was therefore correct in granting Edmond's motion to quash paragraphs one and three of the indictment. Point of error one is overruled.

■ In its second point of error, the State contends that the trial court erred in granting Edmond's motion to quash paragraph two of the indictment.

In paragraph two of its indictment, the State alleged that Edmond intentionally subjected the complaining witness to "mistreatment, to-wit: preventing H.M. Nielson from driving a motor vehicle by denying H.M. Nielson access and use to the motor vehicle under the care, custody, and control of the said H.M. Nielson...."

The offense charged in paragraph two of the indictment is based upon former TEX.PENAL CODE ANN. § 39.02(a)(1), which provides as follows:

(a) A public servant acting under color of his office or employment commits an offense if he:

(1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession assessment, or lien *that he knows is unlawful.*

*Id.* (emphasis added).

In his motion to quash, Edmond urged that paragraph two of the indictment is defective because it fails to allege all of the statutory elements necessary to constitute a section 39.02(a)(1) offense in that the indictment does not allege that the purported "mistreatment" was unlawful or that Edmond knew the purported mistreatment was "unlawful."

The State does not argue that Edmond had adequate notice of the allegation notwithstanding the missing statutory elements; instead, the State argues that there were no missing elements and that the term "unlawful" as used in the statute does not apply to "mistreatment." In other words, the State argues that under the statute, "mistreatment" need not be "unlawful" in order to be a viable criminal offense under section 39.02(a)(1). The State cites no authority for its position to the contrary and concedes that all existing case law is inconsistent with its position. *See Zuniga v. State*, 664 S.W.2d 366 (Tex.App.—Corpus Christi 1983, no pet.) and *Prevo v. State*, 778 S.W.2d 520 (Tex. App.—Corpus Christi 1989, pet. ref'd).

The State, however, purports to rely on the Code Construction Act and the rules of grammar in order to support its argument. *See* TEX.GOV'T CODE ANN. § 311.011 (Vernon 1988). Although it is not patently clear why "mistreatment" is followed by an "or" in the statute, there is nothing in the rules of grammar or common usage that preclude "unlawful" from modifying "mistreatment" as set out in the statute, notwithstanding the "or."

In addition to the provisions of the Code Construction Act relied upon by the State, the Code also provides in part as follows:

In enacting a statute, it is presumed that:

(1) compliance with the constitutions of this state and the United States is intended;

(2) the entire statute is intended to be effective;

(3) a just and reasonable result is intended;

(4) a result feasible of execution is intended....

TEX.GOV'T CODE ANN. § 311.021 (Vernon 1988). All four factors weigh in favor of Edmond's construction of the statute.

First, it is virtually self-evident that a statute which purports to criminalize "mistreatment" is simply not going to pass state or federal constitutional muster. In *Zuniga*, for example, the appellate court specifically held that, contrary to the State's position in this case, this portion of the official oppression statute was constitutional *only* because "unlawful" *does* modify "mistreatment." *Zuniga*, 664 S.W.2d at 371. Therefore, under the State's proposed construction, that portion of the statute would be rendered unconstitutionally vague and overbroad. The Code Construction Act discourages such interpretations.

Second, it would be neither "just" nor "reasonable" to criminalize "mistreatment" otherwise not unlawful. "Mistreatment" could obviously include everything from rudeness during a traffic stop to applying handcuffs uncomfortably tight. Are these to become criminal violations punishable by up to one year in jail and a fine? Under the State's proposed interpretation, they would be.

Finally, there would be no feasible way to fairly enforce a statute which criminalizes purported "mistreatment." The potential for abuse and unequal enforcement of the statute is both obvious and astounding.

For the reasons stated above, we conclude that paragraph two of the indictment is defective. Point of error two is overruled.

■ In its final point of error, the State contends that the trial court erred in granting Edmond's motion to quash paragraph four of the indictment which in pertinent part charged that Edmond did:

then and there intentionally subject H.M. Nielson to sexual harassment by making unwelcome sexual advances and/or making request for sexual favors, submission to which was expressly and implicitly made a term and condition of the exercise and enjoyment by the said H.M. Nielson of a right and/or privilege, to wit: the right and/or privilege to obtain access and use of the motor vehicle under the care, custody and control of the said H.M. Nielson....

The offense charged in paragraph four of the indictment is based upon former TEX.PENAL CODE ANN. § 39.02(a)(3), which provides as follows: "A public servant acting under color of his office or employment commits an offense if he: (3) intentionally subjects another to sexual harassment." In section 39.02(c) the term sexual harassment is defined as follows: "In this section, 'sexual harassment' means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly." Section (a)(3) of the official oppression statute is different from section (a)(1) in that the term "sexual harassment" used in (a)(3) is specifically defined in section (c).

In his motion to quash, Edmond urged that paragraph four of the indictment is defective because of its failure to give him notice of the manner and means of his alleged criminal acts and/or to further describe or define "unwelcome sexual advances" or "request for sexual favors."

There is no statutory definition of "unwelcome sexual advances" or "request for sexual favors." "Unwelcome sexual advances" and "request for sexual favors" potentially encompass an extremely broad spectrum of behavior. Offering to give a ride home or to pay for lunch could be interpreted as "unwelcome sexual advances," as could an endless variety of behavior other than that which is overtly sexual in nature. Likewise, a "request for sexual favors" need not mean a lewd proposition involving an ultimate sex act. Instead, such a "request" could include a request that someone repeat an obscene joke or a request that someone arrange a "date" with a third party.

■ A defendant charged with sexual harassment is therefore entitled to know what he or she did or said that has been deemed an "unwelcome sexual advance" or "request for sexual favor" so that he or she can properly prepare a defense as well as enable him or her to plead any resulting judgment to bar further prosecution for the same offense.

In *Olurebi v. State,* 870 S.W.2d 58 (Tex. Crim.App.1994), the court of criminal appeals held that the trial court should have granted the defendant's motion to quash the indictment for failure to define the term "fictitious credit card." The Court stated:

> The legislature has not defined the term "fictitious credit card," and given our holding today that there are two ways for a credit card to be "fictitious" ... a trial court should grant a motion to quash an indictment that fails to adequately notify the defendant of the manner in which the credit card is fictitious.

*Id.* at 62.

■ Further, in *Coleman v. State,* 643 S.W.2d 124 (Tex.Crim.App.1982), the court of criminal appeals held that the term "appropriate," as an act or omission of the defendant, must be further clarified upon presentation of a motion to quash.

> [I]f a word or term in a charging instrument goes to an *act or omission* of the defendant, and the defendant files and presents to the trial court a motion to quash, the word or term, even though statutorily defined, must be further clarified by the State because the "lack of notice of acts or omissions is by definition a denial of fair notice" to an accused.

*Id.* at 125 (emphasis added) (quoting *Gorman v. State,* 634 S.W.2d 681, 684 (Tex.Crim.App. [Panel Op.] 1982) (op. on reh'g)). *A fortiori,* a word or term in a charging instrument that goes to an act or omission of the defendant and is *not* statutorily defined, must be further clarified in the face of a motion to quash.

In *Haecker v. State,* 571 S.W.2d 920 (Tex. Crim.App. [Panel Op.] 1978), the defendant was charged with "knowingly tortur[ing] ... a dog." Even though the term "torture" was statutorily defined, the court of criminal appeals concluded that the language of the statute was not completely descriptive of the act constituting the offense so as to inform the accused of the nature of the charge. The same is true in the case-at-bar. "Unwelcome sexual advances" and "requests for sexual favors" are not completely descriptive of the purported acts constituting the offense and do not adequately inform Edmond of the nature of the charge.

In *Cruise v. State,* 587 S.W.2d 403 (Tex. Crim.App. [Panel Op.] 1979), the court of criminal appeals held that the term "cause bodily injury" in a robbery indictment did not give adequate notice of the offense with which the defendant was charged.

> The term "cause bodily injury" was susceptible to an almost endless list of possible meanings and it would have been impossible for the State to prove the element without also showing the manner in which it was done.

*Ferguson v. State,* 622 S.W.2d 846, 850 (Tex. Crim.App. [Panel Op.] 1981) (discussing *Cruise*).

Likewise, the terms "unwelcome sexual advances" and "requests for sexual favors" are susceptible to an almost endless list of possible meanings and should be further clarified in an indictment alleging said acts as criminal behavior. *See also, Geter v. State,* 779 S.W.2d 403 (Tex.Crim.App.1989) (term "effective consent" in charging instrument requires further clarification).

Because the terms "unwelcome sexual advances" and "request for sexual favors" do not fairly or adequately notify Edmond of the specific act or acts that form the basis of the accusation against which he must defend himself, and because those same terms as used in the indictment bar any later prosecution for the same offense, the trial court correctly granted Edmond's motion to quash. Point of error three is overruled.

The judgment of the trial court is affirmed.