**The STATE of Texas, Appellant,**

v.

**John Allen MAYS, Appellee.**

No. 13–96–286–CR.

Court of Appeals of Texas, Corpus Christi.

Feb. 20, 1997.

Before DORSEY, CHAVEZ and RODRIGUEZ, JJ.

John Klassen, Criminal District Attorney Pro Tem., Assistant Attorney General, Austin, for Appellant.

John C. Augustine, Saegert Argenand & Augustine, Austin, for Appellee.

## OPINION

RODRIGUEZ, Justice.

In a single indictment, John Mays was charged with illegally soliciting employment for himself and other individuals on two different occasions in violation of the barratry statute.[1] The trial court granted Mays' "Motion to Set Aside Indictment" on the grounds that the indictment failed to specify the manner and means by which Mays allegedly solicited employment. We affirm.

## STANDARD OF REVIEW

■ The State's burden on appeal from the granting of a motion to quash an indictment is to show abuse of discretion by the trial court. *Waldie v. State*, 923 S.W.2d 152, 154 (Tex.App.—Beaumont 1996, no pet.). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990)(citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)). Another way of stating the test is whether the act was arbitrary or unreasonable. *Id.*

## DISCUSSION

Mays was indicted under section 38.12 of the Texas Penal Code, the barratry statute, which provides, in relevant part, that

(a) A person commits an offense if, with intent to obtain an economic benefit the person:

. . .

(2) solicits employment, either in person or by telephone, for himself or for another;

TEX. PENAL CODE ANN. § 38.12(a)(2) (Vernon 1994). The code further defines "solicit employment" as follows:

"Solicit employment" means to communicate in person or by telephone or written communication with a prospective client or a member of the prospective client's family concerning legal representation arising out of a particular occurrence or event, or series of occurrences or events, or concerning an existing legal problem of the prospective client, for the purpose of providing legal representation to the prospective

1. TEX. PENAL CODE ANN. § 38.12 (Vernon 1994).

client, when neither the person receiving the communication nor anyone acting on that person's behalf has requested the communication.

Tex. Penal Code Ann. § 38.01(11) (Vernon 1994).

The State contends that the trial court abused its discretion in quashing the indictment because the indictment described the offense for the purposes of a barratry indictment with more than enough specificity. The indictment provides as follows:

> THE GRAND JURY, ... present in and to the 24th Judicial District Court that JOHN ALLEN MAYS on or about June 8, 1995, and before the presentment of this indictment, in Victoria County, Texas, did then and there, with intent to obtain an economic benefit, knowingly, in person and by telephone, solicit employment for Bernard Klimist and Himself by communicating, for the purpose of providing legal representation, with Lupe Ordonez, a prospective client, concerning legal representation arising out of an accident at a Maverick Mart involving Blanche Esparza, when neither Lupe Ordonez nor anyone acting on behalf of Lupe Ordonez had requested the communication; and the conduct of JOHN ALLEN MAYS was not authorized by the Texas Disciplinary Rules of Professional Conduct or any rule of court.

### Count 2

> IT IS FURTHER PRESENTED that on ar [sic] about October 16, 1994, and before the presentment of this indictment, in Victoria County, Texas, JOHN ALLEN MAYS did then and there, with intent to obtain an economic benefit, knowingly, in person and by telephone, solicit employment for Bernard Klimist, Norman Jones, Knute Dietze and himself, by communicating, for the purpose of providing legal representation, with Gloria Wearden and Marian Rosse, family members of prospective client Rober Wearden, concerning legal representation arising out of an [sic] car accident involving Robert Wearden that happened on or about July 3, 1994, when neither Gloria Wearden nor Marian Rosse

nor anyone acting on behalf of either of them had requested the communication; and the conduct of JOHN ALLEN MAYS was not authorized by the Texas Disciplinary Rules of Professional Conduct or any rule of court.

The State asserts that this indictment was sufficient because (1) it includes every element laid out under section 38.12 of the Penal Code; (2) it tracks the statutory language perfectly; (3) it contains a particularized allegation of the manner and means by which the barratry was committed; and (4) it carefully applies the statutory definition of "solicit employment." Moreover, the State argues, having to be excessively literal about "what was said and what was done" in an indictment is not required and indeed would necessarily entail pleading rather large amounts of evidence in a fashion unprecedented in Texas case law.

As authority for its position, the State refers us to *State v. Edmond,* 933 S.W.2d 120 (Tex.Crim.App.1996). In *Edmond,* a Witchita Falls police officer, Tony Edmond, was indicted with four counts of official oppression but the trial court quashed all four counts of the indictment. The State appealed, and the Second Court of Appeals affirmed the trial court's order as to all four paragraphs. *State v. Edmond,* 903 S.W.2d 856 (Tex.App.—Fort Worth 1995). For purposes of the present case, it is important to analyze and compare the decisions of the Fort Worth Court of Appeals and the Court of Criminal Appeals.

The first and third counts against Edmond alleged that he "then and there intentionally subject[ed] H.M. Nielson to detention that the defendant knew was unlawful" and that he did "then and there, knowing his conduct was unlawful, intentionally deny and impede H.M. Nielson in the exercise and enjoyment of a right and/or privilege." The official oppression statute, section 39.02 of the Texas Penal Code, provides that a public servant commits the offense if he "intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful," or also if the public servant "intentionally denies or impedes another in the exercise or

enjoyment of a right, privilege, power, or immunity, knowing his conduct is unlawful." TEX. PENAL CODE ANN. § 39.02(a)(1), (a)(2) (Vernon 1994). In affirming the trial court's order quashing the indictment, the Fort Worth Court of Appeals reasoned as follows:

> In the case-at-bar, the operative "acts" attributed to Edmond ... are "detention," "deny," and "impede." Although the indictment alleges that these acts were "unlawful," the indictment does not specify how or why the alleged acts of "detaining," "denying," or "impeding" were in fact, unlawful.
>
> ....
>
> Police officers "detain," "deny," and "impede" citizens on a daily basis as an integral part of their job. If the State alleges these otherwise innocent or routine activities were, in this instance, criminal, the State must further allege the manner and means by which Edmond performed these acts. "If it is the manner and means by which an act is done that makes an otherwise innocent act a criminal offense, it is necessary to allege facts showing the manner and means which makes the act a criminal offense." *Giddings v. State,* 816 S.W.2d 538, 541 (Tex.App.—Dallas 1991, pet. ref'd) (citing *Posey v. State,* 545 S.W.2d 162, 163 (Tex.Crim.App.1977)).

*Edmond,* 903 S.W.2d at 859. The court also affirmed on the basis of two other grounds. It concluded that the indictment was defective because (1) it failed to allege that the purported mistreatment was unlawful or that the police officer knew the purported mistreatment was unlawful (count # 2); and (2) it failed to describe purported acts of unwelcome sexual advances or request for sexual favors constituting an offense (count # 4).

The Court of Criminal Appeals granted the State's petition for discretionary review, but only as to the points addressing counts two and four of the indictment. The court chose not to review the Fort Worth court's analysis of counts one and three. In that regard, it is the court's holding as to count four that the State relies upon in the present case. Addressing count four, the Court of Criminal Appeals held that

> [W]hen a statute defines the manner or means of committing an offense, an indictment based upon that statute need not allege anything beyond that definition.
>
> Here, the State utilized the statutory definition of "sexual harassment," electing among [two of] the [three] alternative statutory manner or means. The State was required to do no more. Under appellee's theory, the State had to allege more than a "request for sexual favors." Presumably, the State had also to present an allegation in its indictment regarding what appellee actually said. Such a requirement would improperly place upon the State the burden of pleading facts which are essentially evidentiary in nature. *See Bynum v. State,* 767 S.W.2d 769, 778 (Tex.Crim.App. 1989).
>
> The court of appeals erroneously affirmed the trial court's decision to quash paragraph four of the indictment. It was sufficient that the State elect among the alternative methods which it intended to prove at trial.

*Edmond,* 933 S.W.2d at 130. By negative implication, we can infer that by not granting review on counts one and three, and by its holding as to count four, the Court of Criminal Appeals was setting a guideline for the specificity of indictments. In sum, the court held that if a statute provides definitions of the prohibited conduct, simply tracking the language of the statute, without further description of the manner and means, is satisfactory. But if the statute does not define a particular prohibited activity, greater specificity of the manner and means is required in an indictment.

█ In the present case, the statute in fact provides a definition, however, we find the definition so broad that many "inherently innocent" activities which occur daily in the legal industry fall within its parameters as barratry. The definition of "solicit employment," when applied, suggests that when a lawyer or a lawyer's agent talks to anybody about a case or legal matter which might permit the lawyer to garner an economic benefit, if that "potential client" did not ask for help or for a referral, that communication is criminal and thus, barratry. For example,

under straight application of the definition, the following common occurrences would constitute barratry and merit prosecution:

- Attorney's next-door-neighbor tells attorney that his child had a hot bowl of soup poured in his lap at a restaurant and is now in the hospital having skin grafts on the burned skin. Attorney says, "Neighbor, you should take legal action. If you need help let me know or I can refer you to someone who specializes in that type of law."
- Appellate attorney tells friend who is a trial attorney, "I understand that your firm has been taking a lot of cases to trial. As a matter of fact, I saw that you won that big toxic spill case. I have just devoted my entire practice to handling civil appeals. Why don't you hire me to do some of your appellate work. I'd sure like to work on that spill case."

While the legislature most likely anticipated the situation where an attorney appears at the scene of an accident, hospital, or funeral home to sign up a client, surely the legislature could not have intended to construct a statute that was so broad in its prohibitions, that situations like the examples above and the hundreds of others that occur every day in the legal industry would constitute barratry.

The Court of Criminal Appeals specifically held that "when a statute *defines* the manner or means of committing an offense, an indictment based upon that statute need not allege anything beyond that definition." *Id.* (emphasis added). Nevertheless, the barratry statute's "definition" is hardly a definition; it is more like a characterization or generalization. The definition fails to specify **exactly** what conduct, words, offers, propositions, or gestures, when made in a specific setting, environment, circumstance, or surrounding, will be so grievous that the State has a compelling interest to restrain the speech by making it criminal.

The State contends that no threshold or manner of communication needs to be established. Rather, it contends that the legislature specifically drafted the legislation to

make it clear that a communication automatically becomes illegal whenever it is unsolicited and it involves the solicitation of business for economic benefit. We disagree.

▬ We understand that the legislature has taken a direct stance against barratry. We also recognize that the Court of Criminal Appeals has set a guideline for the specificity required of indictments. However, that rule presupposes that the definition in question is clear, concise, and specific so as to leave no questions as to when and how the line has been crossed. Therefore, we do not interpret the court's decision in *Edmond* to be a bright-line rule.[2] Although an indictment which tracks the language and terms of the statute is ordinarily sufficient, if the statutory language is not completely descriptive, so that particularity is required to afford the defendant notice as required, merely tracking the language of the statute may be insufficient. *State v. Sandoval,* 842 S.W.2d 782, 791 (Tex.App.—Corpus Christi 1992, pet. ref'd); *see also Castillo v. State,* 689 S.W.2d 443, 449 (Tex.Crim.App.1984) ("start a fire" held insufficient to give adequate notice); *Doyle v. State,* 661 S.W.2d 726, 730 (Tex. Crim.App.1983) ("threaten" held insufficient to give adequate notice of how threat was made); *Miller v. State,* 647 S.W.2d 266, 267 (Tex.Crim.App.1983) ("damage and destroy" held insufficient to give notice of manner and means by which property was destroyed or damaged); *Jeffers v. State,* 646 S.W.2d 185 (Tex.Crim.App.1981) ("received bets" held insufficient to give adequate notice); *Ellis v. State,* 613 S.W.2d 741, 741–42 (Tex.Crim.App. 1981) ("cause serious bodily injury" held insufficient to give adequate notice); *Cruise v. State,* 587 S.W.2d 403 (Tex.Crim.App.1979) ("cause bodily injury" held insufficient to give adequate notice); *Haecker v. State,* 571 S.W.2d 920, 921–22 (Tex.Crim.App.1978) ("torturing" held insufficient to give adequate notice).

In the present case, the statute does not define how an inherently innocent "communication" rises to the level of criminal activity. While the State certainly has an interest in

---

**2.** This is particularly true in light of the fact that *Edmond* was limited to the detailed and thor-

ough analysis of sexual harassment, and not barratry or the illegal solicitation of employment.

curbing the truly illegal solicitation of clients, a statute which purports to threaten a person's liberty and livelihood demands exactness. We hold that in the face of a motion to quash, the State must allege, in terms more specific than this statute's definition, how the defendant allegedly illegally communicated with prospective clients. Given that the State did not do so in this instance, the trial court did not abuse its discretion by quashing the indictment for failing to properly notify the defendant of the offense. The State's sole point of error is overruled.

Accordingly, the trial court's order quashing the indictment is AFFIRMED.