The STATE of Texas, Appellant,

v.

Tony EDMOND, Appellee.

No. 0958–95.

Court of Criminal Appeals of Texas, En Banc.

Oct. 2, 1996.

Michael Logan Ware, Fort Worth, for appellant.

Jeffrey L. Van Horn, Asst. State's Attorney, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge.

On June 1, 1994, appellee, Tony Edmond, was charged by indictment with the offense of official oppression, alleged to have occurred while he was employed as a police officer for the City of Wichita Falls.[1] The indictment contained four paragraphs, each alleging an alternative means of committing the offense. The trial court quashed all four paragraphs of the indictment. The State appealed, and the Second Court of Appeals affirmed the trial court's order as to all four paragraphs. *State v. Edmond,* 903 S.W.2d 856 (Tex.App.—Fort Worth 1995). We granted the State's petition for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(2), on two grounds:[2]  (a)

---

1. Appellee was charged under Texas Penal Code § 39.02, which read in relevant part:
   (a) A public servant acting under color of his office or employment commits an offense if he:
      (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful;
         ❊ ❊ ❊
      (3) intentionally subjects another to sexual harassment.
         ❊ ❊ ❊
   (c) In this section, "sexual harassment" means unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly. Penal Code § 39.02 has been recodified as § 39.03 by Acts 1993, 73rd Leg., ch. 900, § 1.01, eff. Sept. 1, 1994.

2. The first ground for review corresponds with paragraph two of the original indictment. The second ground for review corresponds with paragraph four of the original indictment.

whether the court of appeals erred when it held that an indictment for official oppression must specify that appellee's alleged act of "mistreatment" was *actually* unlawful, and (b) whether the court of appeals erred in holding that an indictment for official oppression must describe or define "unwelcome sexual advances" and "request for sexual favors." We will affirm the judgment of the court of appeals as to the first ground, and reverse as to the second ground.

## I.

Paragraph two of the indictment alleged that appellee did:

> intentionally subject H.M. Nielson to *mistreatment*, to wit: preventing H.M. Nielson from driving a motor vehicle by denying H.M. Nielson access and use to [sic] the motor vehicle under the care, custody, and control of the said H.M. Nielson, and the defendant was then and there acting under color of his office and/or employment as a public servant, namely, a police officer for the City of Wichita Falls, Texas. [emphasis added]

In response to this paragraph, appellee filed a motion to quash in which he argued that paragraph two of the indictment failed to allege an offense because it did not aver two necessary elements of "Official Oppression" under § 39.02(a)(1). *See Smith v. State*, 571 S.W.2d 917, 919 (Tex.Crim.App.1978). The first element appellee claimed was missing was an allegation that he acted in a way "that he [knew was] unlawful," a particular culpable mental state found in § 39.02(a)(1). The second element appellee claimed the indictment lacked was an allegation that the mistreatment was actually unlawful.[3]

During the hearing on appellee's motion to quash, the State contended that the specific culpable mental state found in § 39.02(a)(1)—the defendant's knowledge that his conduct was unlawful—only modified "arrest, detention, search, seizure, dispossession, assessment, or lien ..." Hence, a public servant acting under color of his office would violate this statute by intentionally "mistreat-

ing" another, and no more. However, recognizing that courts of appeals had ruled unfavorably to its interpretation, the State amended paragraph two by interlineating the particular culpable mental state which appellee insisted was essential: that the defendant engaged in mistreatment he "knew was unlawful." The State did not, however, amend the indictment to allege the second of appellee's perceived deficiencies: that appellee's mistreatment was actually unlawful. At the hearing on appellee's motion to quash, the State contended, alternatively, that the amendment cured any defect resulting from the missing element.

In response to the State's argument, appellee insisted that knowledge of unlawful conduct referred to every act in § 39.02(a)(1), including mistreatment. Appellee also contended that the State could not amend paragraph two by interlineating an essential element because such a procedure would circumvent his right to be indicted by a grand jury. Also of interest is appellee's admission, during this hearing that, if the State's amendment was proper, the indictment would properly allege a crime. The importance of this admission is that appellee apparently abandoned his contention that the indictment had also to allege that mistreatment was *actually* unlawful, the second deficiency appellee addressed in his written motion to quash.

In any event, the trial court granted appellee's motion to quash. The trial court explicitly ruled that the State's amendment was improper in this context because it circumvented appellee's right to grand jury indictment. Since amendment was improper, the trial court found, the indictment failed to allege an offense because it did not allege that appellee *knew* his conduct was unlawful. The trial court never explicitly ruled, at the hearing, that an indictment had also to allege that mistreatment was *actually* unlawful. However, in the trial court's written order quashing the indictment, it adopted the reasoning set out in appellee's written Motion to Quash. This reasoning included appellee's

---

**3.** Appellee is distinguishing an allegation of "knowledge of illegality" from an allegation that

conduct is *actually* unlawful.

argument that the indictment was defective because it failed to allege that his conduct was *actually* unlawful.

In its brief to the Second Court of Appeals, the State contended that the trial court erred because the only appropriate interpretation of § 39.02(a)(1) supported its contention that "knowledge of illegality" did not modify "mistreatment." Hence, the State argued, it was not required to allege either "knowledge of illegality" or actual unlawful mistreatment. Importantly, the State did *not* challenge the trial court's decision to prohibit the amendment.[4] In the court of appeals, appellee cited two cases from the Thirteenth Court of Appeals in which that court held that "knowledge of illegality" did modify "mistreatment." *See Zuniga v. State,* 664 S.W.2d 366 (Tex. App.—Corpus Christi 1983, no pet.); *Prevo v. State* 778 S.W.2d 520 (Tex.App.—Corpus Christi 1989, pet.ref'd). Appellee also argued that the Code Construction Act supported his interpretation.

The Second Court of Appeals affirmed the trial court's ruling, rejecting the State's arguments. The appellate court began its opinion with an observation that no grammatical rule prevented "knowledge of illegality" from modifying "mistreatment." With this observation, § 39.02(a)(1) was somewhat ambiguous. The court of appeals resolved the ambiguity by invoking the Code Construction Act, Tex.Gov't.Code § 311.021:

> In enacting a statute, it is presumed that:
> (1) compliance with the constitutions of this state and the United States is intended;
> (2) the entire statute is intended to be effective;
> (3) a just and reasonable result is intended;
> (4) a result feasible of execution is intended.

Under the first factor, the court of appeals declared that a statute which criminalized "mistreatment" alone would be unconstitutionally vague and overbroad. Such a potential for constitutional infirmity favored an interpretation which narrowed "mistreatment" by utilizing "unlawful knowledge."

Under the third factor, the court of appeals held that it would be neither "just" nor "reasonable" to criminalize "mistreatment" otherwise not unlawful:

> "Mistreatment" could obviously include everything from rudeness during a traffic stop to applying handcuffs uncomfortably tight. Are these to become criminal violations punishable by up to one year in jail and a fine?
> *State v. Edmond,* 903 S.W.2d at 861.

Under the fourth factor, the court of appeals found that there would be no feasible way to fairly enforce a statute which criminalized "lawful mistreatment" because the potential for abuse and unequal enforcement of the statute was great. For these reasons, the court of appeals held that the State's interpretation of § 39.02(a)(1) was incorrect.

Unfortunately, it is not apparent whether the Second Court of Appeals found that an indictment alleging a violation of § 39.02(a)(1) must allege *both* that a defendant knew his conduct was unlawful *and* that the conduct was actually unlawful. The Court of Appeals concluded its analysis of this point of error by stating: "For the reasons stated above, we conclude that paragraph two of the indictment was defective." While it is clear that the Court of Appeals would at least require an allegation that appellee knew his conduct was unlawful, its reasoning does not illustrate whether the State must also allege that appellee's conduct was actually unlawful.

In its brief to this Court, the State again argues that the best grammatical interpretation of penal code § 39.02(a)(1) is that "knowledge of illegality" does not modify "mistreatment." It begins its argument by citing a "well-established English grammatical principle" that qualifying words, phrases, and clauses are to be applied to words or phrases immediately preceding, and are not to be construed as extending to and including

---

4. Therefore, the issue of whether the State's amendment was appropriate in this instance is not before this Court. We will assume, for the purpose of this appeal, that amendment was improper, and that paragraph two of the indictment did not contain an allegation that appellee knew his conduct was unlawful.

others more remote. *See* 82 C.J.S. *Statutes* § 334; 2A SUTHERLAND STATUTORY CONSTRUCTION § 47.33 (4th ed. 1984). Under this "rule," "knowledge of illegality" would apply to only the series of words after the disjunctive "or" in § 39.02(a)(1), and not to "mistreatment" which is located before the "or."

The State contends also that the Legislature could sensibly treat "mistreatment" in a manner different from the other forms of conduct delineated in § 39.02(a)(1). The State argues that "mistreatment," unlike the other forms of conduct in the subsection, contains an inherent element of wrongfulness. Thus, unlike "arrest, detention, search, seizure, dispossession, assessment, or lien," each of which has no overtone of wrongfulness, "mistreatment" has no need to be modified by "knowledge of illegality." Indeed, the State insists that it would have been reasonable for the Legislature to criminalize all forms of intentional mistreatment by a public servant acting under color of his office or employment.

The State also furnishes what it deems a more sensible illustration of § 39.02(a)(1) had the Legislature intended "knowledge of illegality" to extend to "mistreatment:"

> If the Legislature had enacted the statute in such a manner, it would have read " . . . intentionally subject another to mistreatment, arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful. . . ."

Finally, the State refers this Court to the Code Construction Act, which provides a presumption that all parts of a statute are intended to be effective. *See* Tex.Gov't Code § 311.021. The State asserts that the interpretation by the court of appeals renders meaningless the Legislature's use of the disjunctive clauses to describe different forms of conduct subject to its provisions.

In his brief to this Court, appellee also emphasizes the Code Construction Act in conjunction with the reasoning of the court of appeals. In addition, appellee again cites *Zuniga* and *Prevo,* supra, in which the Thirteenth Court of Appeals found that "knowledge of illegality" did modify "mistreatment." Such an interpretation, the Thirteenth Court

observed, saved § 39.02(a)(1) from being unconstitutionally vague.

### A.

■ Our initial task is to determine whether the phrase "that he knows is unlawful" modifies "mistreatment." Ordinarily, when interpreting a statute, we give effect to the plain meaning of the statute. *Boykin v. State* 818 S.W.2d 782, 785 (Tex. Crim.App.1991). However, if a statute is ambiguous, or if a literal interpretation would lead to an "absurd" result, we are constitutionally authorized to employ extratextual modes of interpretation. One of those extratextual interpretive modes is the presumption of constitutionality. Thus we have held, when interpreting a legislative enactment which is reasonably subject to varying interpretations, that it is this Court's duty to construe the statute in a manner in which we assume a legislative intent to enact a constitutional statute. *Faulk v. State,* 608 S.W.2d 625, 630 (Tex. Crim.App.1980). As the Supreme Court succinctly observed in *United States ex rel. Attorney General v. Delaware & Hudson Co.,* 213 U.S. 366, 29 S.Ct. 527, 53 L.Ed. 836 (1909):

> "[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the court's] duty is to adopt the latter."

Such was the logic of *Faulk,* supra. Indeed, the Code Construction Act § 311.021(1) also supports this approach.

Hence, if § 39.02(a)(1) is susceptible to more than one rational interpretation, and where one of those interpretations raises serious constitutional concerns, this Court is obliged to assume that the Legislature intended the interpretation which secures the statute's constitutional application.

Section 39.02(a)(1) is ambiguous because it is impossible to discern, based upon the text itself, whether the Legislature intended that "knowledge of illegality" apply to "mistreatment." The State focuses on the disjunctive "or" which separates "mistreatment" from

"arrest, detention, search, seizure, dispossession, assessment, or lien." However, little can be gleaned from the placement of the "or." The disjunctive might indicate the Legislature's comprehension that "mistreatment" was different from the other forms of conduct in § 39.02(a)(1), and nothing more. As the State contended, supra, "mistreatment" is dissimilar to "arrest, detention, search, seizure, dispossession, assessment, or lien." Hence, the Legislature may have intended only to acknowledge this fact, and not to indicate that "mistreatment" not be modified by "knowledge of illegality" This interpretation is rational and would support the position of both the court of appeals and appellee.

On the other hand, the disjunctive "or" might indicate, as the State insists, an intent to extricate "mistreatment" from the narrowing influence of the particular culpable mental state "that he knows is unlawful." Yet, if the Legislature had intended this meaning, it might well have placed a comma after "mistreatment" to emphasize its intent. Indeed, if the State's argument were correct, then the mental state "that he knows is unlawful" might modify only "lien" both because it too is separated from the other objects by an "or," and because there is no comma after "lien."

Ultimately, the State's interpretation depends upon the doctrine of the "last antecedent," which suggests that relative or qualifying clauses modify the words or phrases immediately proceeding, and are not to be construed as extending to or including others more remote. This is the only grammatical "rule" the State advances in support of its argument. Even if this Court were to adopt this doctrine into our jurisprudence of statutory interpretation, it is inadequate in this context. The deficiency concerns a major exception to the doctrine of the last antecedent. That exception can be stated as follows:

[T]he doctrine of the "last antecedent" will not be adhered to where extension to a more remote antecedent is clearly required by a consideration of the entire act. *Slight indication of legislative intent so to extend the relative term is sufficient.* Where several words are followed by a clause as much applicable to the first and other words as to the last, the clause should be read as applicable to all. 82 C.J.S. *Statutes* § 334 [emphasis added]

Thus, if there is even a "slight" indication that the Legislature intended "unlawful knowledge" to extend to "mistreatment," then the doctrine has no application.

▋ As we stated earlier, both prior case law and the Code Construction Act advance the proposition that the Legislature is presumed to *intend* that its enactments are constitutional. If it would be unconstitutional to criminalize "mistreatment" alone, and if there is a saving interpretation, we will assume the Legislature *intended* the constitutional interpretation rather than the unconstitutional interpretation. The State's interpretive argument falls by its own terms because we presume legislative intent to enact constitutional statutes. Such intent provides the "slight indication" of the Legislature's resolution that "knowledge of illegality" extend to "mistreatment," if such an interpretation saves the statute from being declared unconstitutional. The question then becomes whether criminalizing intentional mistreatment alone would be unconstitutional.

▋ Under the due process clause of the Fourteenth Amendment, a penal statute is void for vagueness if it fails to define the criminal offense in a manner sufficient to inform ordinary people whether their conduct is prohibited. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). However, the rationale for the vagueness doctrine extends beyond fair warning. A second rationale descends from the notion that a legislature must provide minimal guidelines to govern law enforcement. Without such guidance, a penal statute might be susceptible to arbitrary and discriminatory enforcement. As the Supreme Court observed in *Kolender v. Lawson,* supra:

Where the legislature fails to provide such minimal guidelines, "a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." [citing *Smith v. Goguen*, supra].

■ We have held that a statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Bynum v. State*, 767 S.W.2d 769, 774 (Tex.Crim.App.1989); *Engelking v. State*, 750 S.W.2d 213 (Tex.Crim.App.1988). However, if the meaning of a statute is not provided by its terminology or syntax, and if reasonable people could differ as to its application in any particular circumstance, then a statute is potentially void for vagueness under the Fourteenth Amendment. *See Kolender*, supra. Indeed, we have also held that a criminal statute must be vague as applied; it is insufficient that there may exist hypothetical facts which demonstrate an ambiguity of application. *Corwin v. State*, 870 S.W.2d 23, 29 (Tex.Crim.App.1993).

This Court has declared a very similar statute to be unconstitutionally vague. *May v. State*, 765 S.W.2d 438 (Tex.Crim.App. 1989). Section 42.07 of the Texas Penal Code, as it was prior to amendment in 1983, criminalized certain varieties of "harassment." The harassment statute read, in relevant part:

(a) A person commits an offense if he intentionally:

(1) communicates by telephone or in writing in vulgar, profane, obscene, or indecent language or in a coarse and offensive manner and by this action *intentionally, knowingly, or recklessly annoys or alarms the recipient;*

We held that this statute was unconstitutionally vague because it failed to define, adequately, "annoy" or "alarm." In addition, we held the statute unconstitutionally vague for failing to define whose sensibilities against which to judge whether conduct was annoying or alarming. Thus the harassment statute was unconstitutional because it failed to provide a determinative standard to law enforcement authorities.

■ We fail to see a distinction between a statute which criminalizes intentional annoyance and a statute which criminalizes intentional mistreatment. Conduct which may be deemed "mistreatment" by some may not be viewed as such by others. And most important, a statute which simply declares that mistreatment is criminal must indicate the standard upon which the determination depends, e.g., the sensitivity of the judge, the jury, the arresting officer, or an objective standard. In the absence of such a determinative standard, police officers, prosecutors, and triers of fact are given unfettered discretion to apply the law, creating a danger of arbitrary and discriminatory enforcement.[5]

■ Hence, we perceive grave constitutional difficulties with the State's interpretation of § 39.02(a)(1). Such concerns provide evidence that the Legislature intended that "knowledge of illegality" modify "mistreatment." Indeed, these constitutional concerns also establish that the State's rule of construction—the doctrine of the "last antecedent"—has no application by its own terms. If the State's rule of construction has no application, then there is no compelling grammatical basis to interpret § 39.02(a)(1) in the manner the State suggests. In light of these difficulties, we decline to adopt the State's contention that intentional mistreatment is, by itself, criminal. Rather, we adopt the other rational interpretation of

---

5. Vagueness, unlike overbreadth, requires that a defendant prove the nebulous nature of a criminal statute *as applied to the defendant's particular conduct*. Vagueness does not possess the standing exception found in the overbreadth doctrine. Hence, "[t]hat there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold language too ambiguous to define a criminal defense." *Corwin v. State*, 870 S.W.2d 23, 29 (Tex.Crim.App.1993). Whatever doubt may exist at the periphery, if a defendant's conduct falls within the "core" conduct proscribed by a criminal statute, then the statute is constitutional to that defendant. *Id.* However, given the breadth of the word "mistreatment," most factual scenarios fall within the margin. Stated differently, the term "mistreatment" is so vague that we cannot determine with sufficient certitude whether appellee's verbal "mistreatment" of the complainant falls within the "core" meaning of "mistreatment." Thus, § 39.02(a)(1) is vague as applied to appellee's particular conduct.

§ 39.02(a)(1) that "knowledge of illegality" modifies "mistreatment." This interpretation averts a constitutional difficulty because the term "unlawful" is defined in the penal code. "Unlawful" both clarifies the meaning of "mistreatment" and provides law enforcement authorities with an objective standard by which to determine whether "mistreatment" is criminal.

The term "unlawful" is defined in the Texas Penal Code in § 1.07(a)(48):

"Unlawful" means criminal or tortious or both and includes what would be criminal or tortious but for a defense not amounting to justification or privilege.

Thus, a defendant charged under § 39.02(a)(1) must mistreat another and must also know that his conduct is criminal or tortious. This interpretation avoids constitutional difficulties because potential defendants are not subject to the arbitrary predilection of law enforcement regarding the meaning of "mistreatment"; only "mistreatment" which is criminal or tortious is condemned. Such a standard also provides an objective criterion, bypassing our concerns in *May*, supra, that a criminal statute must provide a "sensibility" standard.

### B.

Having held that the court of appeals did not err in holding that the particular culpable mental state found in § 39.02(a)(1) modifies "mistreatment," we now turn to the State's contention that the court of appeals erred when it held that the State must also allege that appellee's conduct was *actually* unlawful. As noted, supra, there is some ambiguity in this regard because the reasoning of the court of appeals is unclear. Yet, the court of appeals can fairly be interpreted as requiring the State to allege both that appellee's conduct was actually unlawful and that appellee knew his conduct was unlawful. Hence, we will address the State's contention.

■ In order to commit an offense under § 39.02(a)(1), a defendant must "know" that his conduct which constitutes "mistreatment" is unlawful. In order for a defendant to know this, the mistreatment must be, in fact,

unlawful. Otherwise, a defendant's "mistake of law" as to the illegality of his own act would create liability where none before existed. Hence, by alleging unlawful knowledge alone, an indictment properly alleges that the relevant conduct was actually unlawful. *see Prevo v. State*, 778 S.W.2d 520, 523 (Tex.App.-Corpus Christi 1989).

■ Generally, an indictment which tracks the statutory language proscribing certain conduct is sufficient to charge a criminal offense. In the case at bar, the State need only have alleged unlawful knowledge, tracking the language of the statute. The State need not have alleged that appellee's conduct was actually unlawful. Therefore, the Court of Appeals erred to the extent that it required the State to allege that appellee's conduct was actually unlawful.

### II.

■ In the State's second ground for review, it contends the court of appeals erred in affirming the trial court's decision to quash paragraph four of the indictment. Specifically, the State disputes the appellate court's affirmation of the trial court's ruling that the State had further to describe or to define "unwelcome sexual advances" and "request for sexual favors" in its indictment.

Section 39.02(a)(2) [6] criminalizes intentional sexual harassment of another by a public servant acting under color of his office. Sub section 39.02(c) defines "sexual harassment":

(c) In this section, "sexual harassment" means unwelcome sexual advances, request for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly.

Hence, § 39.02 criminalizes "sexual harassment" and then defines "sexual harassment."

In the fourth paragraph of its indictment the State alleged that appellee did:

then and there intentionally subject H.M. Nielson to sexual harassment by making unwelcome sexual advances and/or making

---

**6.** This statute was recodified as § 39.03(a)(2) in September of 1994.

request for sexual favors, submission to which was expressly and implicitly made a term and condition of the exercise and enjoyment by the said H.M. Nielson of a right and/ or privilege, to wit: the right and/or privilege to obtain access and use of the motor vehicle under the care, custody and control of the said H.M. Nielson....

Thus, the State utilized the statutory definition of "sexual harassment" in its indictment, basically tracking the language of § 39.02(a)(3) and (c).

During pretrial proceedings, appellee challenged this paragraph of the indictment. Appellee contended that § 39.02(a)(3) criminalized an act or omission. As such, appellee claimed the indictment had to allege the *manner or means* of his alleged criminal acts by further describing or defining "unwelcome sexual advances" or "request for sexual favors." Appellee contended that it was insufficient, for the purpose of notice, to use only the statutory means and manner of "sexual harassment." In response, the State contended that paragraph four was sufficient to provide notice, given the common meaning of the words in the statutory definition.

The trial court adopted appellee's argument and quashed paragraph four. Specifically, the trial court compelled the State to go beyond the statutory definition of "sexual harassment," to further allege the manner and means of "unwelcome sexual advances" and "request for sexual favors."

In its brief to the court of appeals, the State argued that, if a statute defines alternative manners and means of committing an offense, the State is not required to further describe or define the alternative statutory definitions. The State argued that it provides sufficient notice to a defendant if it alleges which of several statutory definitions it will rely on.

In his brief to the court of appeals, appellee contended that the terms "unwelcome sexual advances" and "requests for sexual favors" were susceptible to countless interpretations. Hence, the terms must be further clarified in an indictment alleging "sexual harassment." Without further clarification, appellee asserted he would be denied proper notice of the offense for which he is charged.

The Court of Appeals agreed with appellee and affirmed the decision of the trial court. First, the court of appeals concluded that the definition provided in § 39.02(c) was not completely descriptive of the act constituting the offense so as to inform the accused of the nature of the charge. *See Haecker v. State*, 571 S.W.2d 920 (Tex.Crim.[Panel Op.] 1978). Second, the court of appeals held that the terms in § 39.02(c) were susceptible to "an almost endless list of possible meanings," frustrating proper notice to appellee. *See Ferguson v. State*, 622 S.W.2d 846, 850 (Tex. Crim.App. [Panel Op.] 1981).

■ There is no assertion that the indictment failed to charge a criminal offense under § 39.02(c). Rather, the issue presented is whether appellee was entitled to further notice so as to adequately prepare for his defense. In this regard, we have long held that a charging instrument which tracks the language of a criminal statute possesses sufficient specificity to provide a defendant with notice of a charged offense in most circumstances. *Bynum v. State*, 767 S.W.2d 769, 778 (Tex.Crim.App.1989); *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex.Crim.App. 1988).

The court of appeals' reliance upon *Olurebi v. State*, 870 S.W.2d 58 (Tex.Crim.App.1994), is erroneous. In *Olurebi* this Court held that an indictment tracking the statutory language found in Penal Code § 32.31(b)(2) was insufficient to provide notice because there were two methods by which one could possess a "fictitious credit card." The State's indictment was deficient because, by merely tracking the statutory language in § 32.31(b)(1), the indictment did not contain sufficient specificity to notify the defendant as to which method of commission the defendant was alleged to have accomplished.

Indeed, *Olurebi* was an extension this Court's holding in *Geter v. State*, 779 S.W.2d 403, 405 (Tex.Crim.App.1989). In this context, we have often held that where a criminal statute possesses statutorily-defined, alternative methods of committing an offense, then upon timely request, a defendant is entitled to an allegation of which statutory

method the State intends to prove. *Geter v. State,* supra; *Garcia v. State,* 747 S.W.2d 379, 380–81 (Tex.Crim.App.1988). In *Olurebi,* we identified two ways to possess a "fictitious credit card" under § 32.31(b)(1); we, therefore, required the State to plead which it intended to prove.

In the case at bar, the State complied with the *Geter* requirement when it conjunctively alleged two of the three statutory acts or omissions constituting the charged offense under § 39.02(c). Hence, under the rule in *Geter,* supra, appellee received the proper level of notice and was entitled to no more. The court of appeals' reliance upon *Olurebi* was erroneous because, here, the State did allege which manner or means it intended to utilize in its proof against appellee.

The court of appeals also relied upon *Coleman v. State,* 643 S.W.2d 124 (Tex.Crim.App. 1982). In *Coleman,* we held that an indictment which tracked the statutory language for theft provided insufficient notice to the defendant. Notice was deficient because the indictment simply alleged that the defendant "did ... appropriate" property, without alleging the manner or means of appropriation. Importantly, § 31.02 specified the statutory manner or means one would accomplish to "appropriate," yet the indictment did not employ these statutory means or manners.

*Coleman* has no application to the case at bar because, here, the State did more than allege that appellee "sexually harassed" the complainant. The State also alleged *how* the defendant committed the offense of "sexual harassment" in its indictment by alleging the statutory manner or means of conduct. Under its terms, *Coleman* would find application only if the State failed to elect among the statutory methods in its indictment. Hence, the court of appeals erroneously relied on *Coleman,* supra.

The court of appeals also relied upon *Haecker v. State,* 571 S.W.2d 920 (Tex.Crim. App. [Panel Op.] 1978). Again, reliance upon *Haecker* is misplaced because it concerned only the need for further specification as to a matter not addressed by the underlying penal statute. In *Haecker,* the indictment alleged that the defendant "tortured" an animal and did not allege a manner or means of

"torture." Nor did the statute possess specific statutory methods for one to "torture." In this context, we held that merely alleging a defendant "tortured" an animal—tracking the language of the statute—did not provide sufficient notice to the defendant.

However, in the case at bar, the underlying penal statute *does* possess specific statutory methods for one to commit "sexual harassment," and the State elected among those statutory alternatives in its indictment. Thus, unlike the defendant in *Haecker,* appellee was provided notice: The State alleged that appellee made unwelcome sexual advances and/or requests for sexual favors, submission to which was made a term or condition of a person's exercise or enjoyment of a right. *Haecker* is distinct from the case at bar.

Finally, the court of appeals cites *Cruise v. State,* 587 S.W.2d 403 (Tex.Crim.App. [Panel Op.] 1979). The defendant in *Cruise* was alleged to have committed robbery by causing "bodily injury" to the complainant. Like the other cases relied upon by the court of appeals, this was a case in which the underlying penal statute did not address the manner or means of causing "bodily injury." We held that the State was compelled to allege the method the defendant chose to cause injury to the complainant.

Again, in the case at bar, the State did more than allege that appellee "sexually harassed" the complainant. The State also alleged the appellee's method of "sexual harassment," via the specific statutory alternatives in § 39.02(c). *Cruise* is distinguished from the case at bar.

■ The proper resolution of this case originates with this Court's holding in *Thomas v. State,* 621 S.W.2d 158, 161 (Tex.Crim.App.1981)(opinion on rehearing):

> The general rule is that a motion to quash will be allowed if the facts sought are essential to give notice. However, unless a fact is essential, the indictment need not plead evidence relied on by the State. *Smith v. State,* 502 S.W.2d 133 (Tex.Crim. App.1973); *Cameron v. State,* 401 S.W.2d 809 (Tex.Crim.App.1966). Moreover, when a term is defined in the statutes, it need

not be further alleged in the indictment. *American Plant Food Corporation v. State,* 508 S.W.2d 598 (Tex.Crim.App. 1974); *May v. State,* 618 S.W.2d 333 (Tex. Crim.App.1981).

Hence, when a statute defines the manner or means of committing an offense, an indictment based upon that statute need not allege anything beyond that definition.

Here, the State utilized the statutory definition of "sexual harassment," electing among the alternative statutory manner or means. The State was required to do no more. Under appellee's theory, the State had to allege more than a "request for sexual favors." Presumably, the State had also to present an allegation in its indictment regarding what appellee actually said. Such a requirement would improperly place upon the State the burden of pleading facts which are essentially evidentiary in nature. *See Bynum v. State,* 767 S.W.2d 769, 778 (Tex. Crim.App.1989).

The court of appeals erroneously affirmed the trial court's decision to quash paragraph four of the indictment. It was sufficient that the State elect among the alternative methods which it intended to prove at trial.

We AFFIRM that part of the judgment of the court of appeals that relates to the trial court's quashing of paragraph two of this indictment, and we REVERSE that part of the judgment of the court of appeals that relates to the trial court's quashing of paragraph four of the indictment, and we REMAND the cause to the trial court for further proceedings consistent with this opinion.

CLINTON, J., concurs in the result.

OVERSTREET, Judge, dissents with the following note:

I dissent to the majority opinion because I believe the Court of Appeals correctly decided all issues. The proper disposition is to acknowledge that this matter was improvidently granted.

MEYERS, J., not participating.

BAIRD, Judge, concurring in part and dissenting in part on State's Petition for Discretionary Review.

I concur in the resolution of the first ground for review but dissent to the resolution of the second ground for review.

## I.

Only the fourth paragraph of the instant indictment is relevant to this opinion. That paragraph alleged that appellee:

> ... did then and there intentionally subject [the victim] to sexual harassment by making unwelcome sexual advances and/or making request for sexual favors, submission to which was expressly and implicitly made a term and condition of the exercise and enjoyment by the said [victim] of a right and/or privilege, to-wit: the right and/or privilege to obtain access and use of the motor vehicle under the care, custody and control of the said [the victim], and the defendant was then and there acting under the color of his office and/or employment as a public servant, namely a police officer for the City of Wichita Falls, Texas.

Appellee contended the paragraph should be quashed because it failed to provide notice of the manner and means of the alleged unlawful conduct and/or to further describe or define "unwelcome sexual advances" and "request for sexual favors." The trial judge granted appellee's motion and quashed the fourth paragraph of the indictment. The State appealed and the Court of Appeals affirmed. *State v. Edmond,* 903 S.W.2d 856 (Tex.App.—Fort Worth 1995).

The Court of Appeals held:

> Because the terms "unwelcome sexual advances" and "requests for sexual favors" do not fairly or adequately notify Edmond of the specific act or acts that form the basis of the accusation against which he must defend himself, and because those terms as used in the indictment bar any later prosecution for the same offense, the trial court correctly granted Edmond's motion to quash.

*Id.,* 903 S.W.2d at 862.

The majority reverses, holding the indictment is sufficient because it tracked the stat-

utory definition of sexual harassment which includes "unwelcome sexual advances" and "requests for sexual favors" and, therefore, is sufficiently specific to provide appellee with notice of the charged offense. *Ante,* 933 S.W.2d at 128. For the following reasons, I disagree.

## II.

An accused's right to notice of the accusation against him is premised upon constitutional principles, both federal and state, and several statutory provisions. The Sixth Amendment guarantees the accused shall enjoy the right to be informed of the nature and cause of the accusation. Art. I, § 10 of the Texas Constitution guarantees an accused the right to demand the nature and cause of the accusation against him. And, the Legislature enacted statutes to protect this right. *See,* Tex.Code Crim.Proc.Ann. art. 21.02(7) ("The offense must be set forth in plain and intelligible words."); art. 21.03 ("Everything should be stated in an indictment which is necessary to be proved."); art. 21.04 ("The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."); art. 21.11 (An indictment is sufficient if it gives "the defendant notice of the particular offense with which he is charged, and enable[s] the court ... to pronounce a proper judgment...."); art. 21.15 (Indictment charging recklessness or criminal negligence must set forth the "act or acts relied upon to constitute recklessness or criminal negligence...."); art. 21.19 (An indictment shall not be insufficient if any defect of form does not "prejudice the substantial rights of the defendant."); *and,* art. 21.23 (The statutes pertaining to allegations in an indictment also apply to informations.).

Long ago, to protect this right to notice, we held:

Our statutes only require such certainty in indictments as will enable the accused to plead the judgment rendered thereon in bar of any subsequent proceeding. Our decisions hold ... that the indictment should set out the particular offense

charged with such certainty as that *a presumptively innocent man seeking to know what he must meet may ascertain fully therefrom the matters charged against him.*[1]

*Hardin v. State,* 85 Tex.Crim. 220, 211 S.W. 233, 236 (1919). *See also, Castillo v. State,* 689 S.W.2d 443, 447 (Tex.Cr.App.1984) ("[T]he question presented is whether the face of the indictment or charging instrument sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense."); *Swabado v. State,* 597 S.W.2d 361, 363 (Tex.Cr.App.1980); *and, Earl v. State,* 33 Tex.Crim. 570, 28 S.W. 469 (1894). More recently we held:

... an [indictment] must allege facts sufficient to give the accused notice of the particular offense with which he is charged.... *It is not sufficient to say that the accused knew with what offense he was charged; rather, we must inquire as to whether the face of the instrument sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense.*

*Haecker v. State,* 571 S.W.2d 920, 921 (Tex. Cr.App.1978). *See also, Daniels v. State,* 754 S.W.2d 214, 217 (Tex.Cr.App.1988); *Beck v. State,* 682 S.W.2d 550, 554 (Tex.Cr.App.1985); *McBrayer v. State,* 642 S.W.2d 504 (Tex.Cr. App.1982); *Evans v. State,* 623 S.W.2d 924, 925 (Tex.Cr.App.1981); *Moore v. State,* 532 S.W.2d 333 (Tex.Cr.App.1976).

An accused is not required to anticipate any and all variant facts the State might hypothetically seek to establish. *Drumm v. State,* 560 S.W.2d 944, 947 (Tex.Cr.App.1977). Therefore, in the face of a motion to quash, an indictment must "allege on its face the facts necessary (1) to show that the offense was committed, (2) to bar a subsequent prosecution for the same offense, and (3) to give the defendant notice of precisely what he is charged with." *Terry v. State,* 471 S.W.2d 848, 852 (Tex.Cr.App.1971). *See also, DeVaughn v. State,* 749 S.W.2d 62, 67 (Tex.Cr. App.1988) (It is improper to look to the record of the case to determine whether the defendant had notice.); *and, Beck,* 682

---

1.  All emphasis is supplied unless otherwise indi-      cated.

S.W.2d at 554 ("[A]n offense should be charged in plain and intelligible words with such certainty as to enable an accused to know what he will be called upon to defend against and to enable him to plead judgment that may be given as it is in bar of any further prosecution for the same offense.").

To determine whether an indictment provides adequate notice we look at the indictment as a whole, from the defendant's perspective. *DeVaughn,* 749 S.W.2d at 67 (Court will focus on the indictment as a whole to determine if it sufficiently charges an offense.); *Dennis v. State,* 647 S.W.2d 275, 279 (Tex.Cr.App.1983) (Court focuses on the indictment as a whole.); *Jeffers v. State,* 646 S.W.2d 185, 187 (Tex.Cr.App.1981) (Court reviews indictment from the defendant's perspective.); *Gorman v. State,* 634 S.W.2d 681, 682 (Tex.Cr.App.1982) (Court considers the indictment from the defendant's perspective.); *Drumm,* 560 S.W.2d at 946 (We examine "the criminal accusation from the perspective of the accused...."); and, *Swabado,* 597 S.W.2d at 364 ("The accused must be given information upon which he may prepare his defense and this information must come from the face of the indictment.").

A motion to quash an indictment should be granted where the language concerning the defendant's conduct is so vague or indefinite as to deny the defendant effective notice of the acts he allegedly committed. *DeVaughn,* 749 S.W.2d at 67. *See also, Thomas v. State,* 621 S.W.2d 158, 163 (Tex.Cr.App.1981) (Opinion on Rehearing); *Lindsay v. State,* 588 S.W.2d 570 (Tex.Cr.App.1979); *Cruise v. State,* 587 S.W.2d 403 (Tex.Cr.App.1979); and, *Haecker,* 571 S.W.2d at 920. As a general rule, an indictment which tracks the statutory language is sufficient. *Daniels,* 754 S.W.2d at 218; *Castillo,* 689 S.W.2d at 448; *Beck,* 682 S.W.2d at 554; *Evans,* 623 S.W.2d at 925; *May v. State,* 618 S.W.2d 333, 341 (Tex.Cr.App.1981); *Haecker,* 571 S.W.2d at 921; and, *Ducree v. State,* 681 S.W.2d 157, 158 (Tex.App.—Houston [14th Dist.] 1984). And, it is rare when an indictment, drafted in the language of a penal statute, is insufficient to provide a defendant notice of the offense charged. *Daniels,* 754 S.W.2d at 218; *Beck,*

682 S.W.2d at 554; *Evans,* 623 S.W.2d at 925; and, *May,* 618 S.W.2d at 341. This is because the State is not normally required to plead the pure evidentiary facts upon which it will rely. *Daniels,* 754 S.W.2d at 218; *Beck,* 682 S.W.2d at 554; *Ducree,* 681 S.W.2d at 158; *May,* 618 S.W.2d at 341; *Phillips v. State,* 597 S.W.2d 929 (Tex.Cr.App.1980); and, *Cameron v. State,* 401 S.W.2d 809 (Tex. Cr.App.1966).

But there are two exceptions to the general rule that indictments drafted in the statutory language are sufficient. First, where an indictment contains a necessary allegation of an act by the defendant which comprises more than one statutorily defined means of its performance, but the indictment fails to specify which of the statutory definitions of the act is relied upon, the indictment fails to provide the constitutionally required notice. *Gibbons v. State,* 652 S.W.2d 413 (Tex.Cr. App.1983); *Gorman,* 634 S.W.2d at 682–683; *Ferguson v. State,* 622 S.W.2d 846, 849 (Tex. Cr.App.1981) (Opinion on Rehearing); *Mullinax v. State,* 756 S.W.2d 40, 42–43 (Tex. App.—Texarkana 1988); *Jackson v. State,* 743 S.W.2d 239, 240 (Tex.App.—Amarillo 1985); and, *Bertram v. State,* 670 S.W.2d 305, 308 (Tex.App.—Amarillo 1983). *But see, Reese v. State,* 712 S.W.2d 131, 134 (Tex.Cr. App.1986) (Indictment for aggravating kidnapping did not have to further define "restrain.").

In *Geter v. State,* 779 S.W.2d 403 (Tex.Cr. App.1989), the defendant was charged with theft, namely appropriating United States Currency without the effective consent of its owner. The defendant filed a motion to quash the indictment because it failed to provide her notice of how her consent was not effective. The trial judge denied her motion. At the time the Texas Penal Code defined consent as follows:

"Effective Consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:

(A) induced by deception or coercion;

(B) given by a person the actor knows is not legally authorized to act for the owner;

(C) given by a person who by reason of youth, mental disease or defect, or intox-

ication is known by the actor to be unable to make reasonable property dispositions; or

(D) given solely to detect the commission of an offense.

Tex.Penal Code Ann. § 31.01(4) (Since amended and now appearing at Tex.Penal Code Ann. § 31.01(3).). We reversed, holding the indictment was insufficient to provide the defendant notice of which definition the State would rely upon to prove she had no effective consent. *Geter*, 779 S.W.2d at 407. *See also, Haecker, supra* (Indictment for cruelty to animals which failed to allege among the many definitions of "torture" was insufficient.).

Second, if the statutory language is not completely descriptive, merely tracking the language of the statute is insufficient to provide the constitutionally required notice to the defendant. *Haecker*, 571 S.W.2d at 921–922; *and, Conklin v. State*, 144 Tex.Crim. 343, 162 S.W.2d 973 (1942). For example, in *Swabado*, the defendant was charged with tampering with a government record and filed a motion to quash the indictment, contending it was vague and ambiguous. *Id.*, 597 S.W.2d at 363–363. The trial judge denied the motion. We held the trial judge erred in denying the motion because the indictment failed to identify what government records were allegedly tampered with. The defendant, a nursing home administrator for several years prior to the indictment, routinely prepared and filed government records. *Id.*, 597 S.W.2d at 363. We further held the date alleged in the indictment could not be used to identify the government records because the State was entitled to prove that the offense was committed at any time prior to the return of the indictment which was within the period of limitation. *Ibid. See, Hill v. State*, 544 S.W.2d 411 (Tex.Cr. App.1976); *and, Nees v. State*, 402 S.W.2d 186 (Tex.Cr.App.1966). Thus, the statutory language was insufficient to provide the defendant with notice of the offense for which he was charged. *Swabado*, 597 S.W.2d at 363. *See, Olurebi v. State*, 870 S.W.2d 58, 62 (Tex.Cr.App.1994) (Indictment which fails to notify the defendant of the manner in which a credit card is fictitious, is insufficient.);

*Castillo*, 689 S.W.2d at 448 (Indictment which failed to allege the manner in which the defendant "started a fire" was insufficient.); *Miller v. State*, 647 S.W.2d 266, 267 (Tex.Cr.App.1983) (Indictment which failed to allege the manner and means by which the defendant destroyed property was insufficient.); *Jeffers*, 646 S.W.2d at 187–188 (Indictment which failed to allege the manner by which the defendant received bets or offers to bet was insufficient.); *and, Ex parte Davis*, 642 S.W.2d 179, 180 (Tex.Cr.App. 1982) (Indictment which failed to provide duplication of the allegedly forged instrument was insufficient to provide constitutionally required notice.). *But, Ozack v. State*, 646 S.W.2d 941 (Tex.Cr.App.1983) (Statutory language was descriptive of the "offer to engage in sexual conduct."); *and, Nethery v. State*, 692 S.W.2d 686, 695 (Tex.Cr.App.1985) (Indictment did not have to define "peace officer.").

### III.

Sexual harassment is defined as "unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature, submission to which is made a term or condition of a person's exercise or enjoyment of any right, privilege, power, or immunity, either explicitly or implicitly." Tex. Penal Code Ann. § 39.03(c). Paragraph four alleges appellee made "unwelcome sexual advances" and/or requests "for sexual favors."

The State contends the instant allegations are sufficient because the indictment specifies which of the terms within the statutory definition of sexual harassment are relied upon to convict. According to the State, the *Gibbons, Geter* and *Ferguson*, first exception is not applicable. The majority agrees and so do I.

However, the majority does not address the holding of the Court of Appeals or appellant's contention under the second exception, namely that the terms "are susceptible to an almost endless list of possible meanings." Appellee's Brief, pg. 12. Appellee contends that "unwelcome sexual advances" and "requests for sexual favors" are not completely descriptive of the offense. Stated different-

ly, appellee contends the statutory definition of sexual harassment is insufficient to satisfy his constitutional and statutory rights to notice of the charges against him. I agree.

Appellee is not required to "anticipate any and all variant facts the State might hypothetically seek to establish." *Drumm*, 560 S.W.2d at 947. And, even though the "unwelcome sexual advances" and "requests for sexual favors" are parts of the statutory definition of sexual harassment, those terms are too general to provide appellee notice of the particular offense for which he is charged or to bar a subsequent prosecution for the same offense. *See, Terry*, 471 S.W.2d at 852. In the early words of our Court, it would be all but impossible for the "presumptively innocent man .. to ascertain fully [from this indictment] the matters charged against him." *Hardin*, 211 S.W. at 233. Indeed, the acts or omissions which might constitute "unwelcome sexual advances" or "requests for sexual favors," both implicitly or explicitly are countless. As the Court of Appeals noted:

> There is no statutory definition of "unwelcome sexual advances" or "request for sexual favors." [Both terms] potentially encompass an extremely broad spectrum of behavior. Offering to give a ride home to or pay for lunch could be interpreted as "unwelcome sexual advances," as could an endless variety of behavior other than that which is overtly sexual in nature. Likewise, a "request for sexual favors" need not mean a lewd proposition involving an ultimate sex act. Instead, such a "request" could include an obscene joke or a request that someone arrange a "date" with a third party.

*Edmond*, 903 S.W.2d at 861.

Because the instant indictment fails to provide the notice guaranteed by the Sixth Amendment of the United States Constitution and art. I, § 10 of the Texas Constitution, I would affirm the judgment of the Court of Appeals.

## IV.

I join the majority opinion as it relates to the first ground for review but I dissent to the resolution of the second ground for review.