NUMBER 13-99-403-CR

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                      CORPUS CHRISTI B
EDINBURG

 



 

SYED AMIR KIDWAI,                                                             Appellant,

 

                                                   v.

 

THE STATE OF TEXAS,                                                          Appellee.

 

 



                        On appeal from the 209th District Court

                                   of Harris County, Texas.

 

 



                                   O P I N I O N

 

         Before Chief Justice Valdez
and Justices Rodriguez and Baird[1]

                                   Opinion by
Justice Baird

 

 








Appellant was charged by indictment with the offense of
theft.  A jury convicted appellant of the
charged offense.  The trial judge
assessed punishment at two years confinement in a state jail facility, probated
for three years, and a fine of $500. 
Appellant raises six points of error. 
We affirm.

I.  Sufficiency
Challenges.

Points of error one and two contend the evidence is legally and
factually insufficient to sustain the jury=s verdict,
respectively.

A.  Factual Summary.

Sheryl Anderson was a peace officer working undercover with the
Houston Police Department.  In that
capacity, she often dealt with an informant, Senaka Rivers.  As a result of information received from
Rivers, Anderson set up an undercover operation wherein she and Rivers met with
Raul Kahn who wanted to purchase several stolen Compaq laptop computers.  Appellant was not present at this
meeting.  Leland Dean, a security officer
with Compaq, later provided those computers to Anderson. 








Anderson was wired for sound the following week when she and
Rivers returned to Kahn=s place of
employment, Kashmere Laboratory, with the computers furnished by Dean.  Kahn asked to see the computers, and the
three walked to Anderson=s car where she
opened the trunk where the computers were stored and Kahn examined them.  During this examination, Anderson told Kahn
the computers were stolen.  Each of the
three carried a computer into the building and placed them on a table.  Kahn left the room, and returned with appellant
who began to examine the computers.  At
this time, Anderson whispered to appellant that the computers were stolen.  Anderson, Rivers and appellant left the
building; Anderson again told appellant that the computers were stolen.  They drove in appellant=s vehicle to a
nearby bank to obtain $900, the amount previously agreed upon by Anderson and
Kahn to purchase the three computers for $300 each.  Upon their return, appellant handed Anderson
a bank envelope which contained $900 in cash. 
Appellant was then arrested for the instant offense.  An audio recording of this entire transaction
was introduced into evidence and played to the jury.  

Leland Dean, a theft investigator at Compaq testified that he
worked frequently on reverse sting operations with peace officers.  Dean provided the computers used in the
instant case, Presario 1260's, and testified the fair market value for each
computer was $1,499 to $1,799. 
Therefore, the low end of their value on the date of the alleged offense
was approximately $4,500.  On
cross-examination, Dean testified that a Compaq laptop could be purchased for
as low as $900.  At that price, the value
of the three computers would be $2,700.  








Appellant testified he was the owner of Kashmere Laboratory and
had been since 1980.  He had fifty-two
employees, one of whom was Kahn who worked as a lab technician.  Appellant used twenty-one computers in his business.  The first time he met Anderson and Rivers was
on the date of the alleged offense. 
Anderson said she worked at Compaq and that Rivers was her
boyfriend.  Rivers used the alias of
White.  Kahn requested a $200 loan from
appellant to buy a computer.  Appellant,
who was also interested in purchasing a computer, examined the computers to see
if their features were what he needed. 
Appellant decided to make a $700 down payment on a computer which would
be delivered at a later date.  

Three exhibits were admitted into evidence:  a check written by appellant with Acomputer
payment@ on the memo
line; the tab of a checkbook stating Acomputer person
White, computer, social security number, XXX-XX-XXXX, $900@; and, a
microcopy of the check which showed it had been processed by the bank.  Appellant stated he did this to keep a record
for tax purposes.  He testified the check
was for his $700 down payment and the $200 loan to Kahn.  These two amounts total $900, the amount
given to Anderson by appellant.  He
further testified that he was never told that the computers were stolen.  

B.  Standards of
Appellate Review.








Legal sufficiency is the constitutional minimum required by the
Due Process Clause of the Fourteenth Amendment to sustain a criminal
conviction.  Jackson v. Virginia,
443 U.S. 307, 315‑16 (1979). The appellate standard for reviewing a legal
sufficiency challenge is whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.  Id. at 320.  The evidence is examined in the light most
favorable to the fact-finder.  Id.  Sufficiency of the evidence is measured by
the hypothetically correct jury charge, which accurately sets out the law, is
authorized by the indictment, and does not unnecessarily increase the State's
burden of proof.  Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Cano v. State, 3 S.W.3d 99,
105 (Tex. App.BCorpus Christi
1999, pet. ref'd).  A successful legal
sufficiency challenge will result in rendition of an acquittal by the reviewing
court.  Tibbs v. Florida, 457 U.S.
31, 41‑42 (1982).

We employ a different standard of appellate review when
determining whether the evidence is factual sufficient to support the
verdict.  First, we assume that the
evidence is legally sufficient under the Jackson standard.  Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996).  We then consider
all of the record evidence, not just the evidence which supports the
verdict.  Id.  We review the evidence weighed by the jury
which tends to prove the existence of the fact in dispute, and compare it to
the evidence which tends to disprove that fact. 
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997).  We may disagree with the jury's
determination, even if probative evidence exists which supports the verdict. Clewis,
922 S.W.2d at 133.  However, our
evaluation should not substantially intrude upon the jury's role as the sole
judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at 164.  Where there is conflicting evidence, the
jury's verdict on such matters is generally regarded as conclusive.  Van Zandt v. State, 932 S.W.2d 88, 96
(Tex. App.BEl Paso 1996,
pet. ref'd).  We will reverse only when
the verdict is against the great weight of the evidence presented at trial so
as to be clearly wrong and unjust.  Clewis,
922 S.W.2d at 134.

                                                     C.  Analysis.








Appellant first argues there is no
evidence from which a rationale jury could find he appropriated three
computers from Anderson.  App. br. pg. 8
(emphasis in original). While there is no evidence to prove that appellant,
alone, appropriated the computers, there is evidence that Kahn, Anderson and
Rivers took the computers to Kahn=s lab. The
computers remained there while appellant, Anderson, and Rivers traveled to the
bank to obtain the funds.  Therefore,
under the law of parties, a rational jury could have found appellant
appropriated the computers.  This is true
even though the law of parties was not included in the court=s charge to the
jury.  Blanco v. State, 962 S.W.2d
46, 46-47 (Tex. Crim. App. 1998); Swartz v. State, 61 S.W.3d 781, 785
(Tex. App.BCorpus Christi
2001, pet. ref=d); Howard
v. State, 966 S.W.2d 821, 824 (Tex. App.BAustin 1998, pet. ref'd).

Appellant=s second
argument is premised on the first; specifically, appellant argues that since
the evidence is insufficient to prove appropriation of three computers, the
evidence is insufficient to establish the value of one computer was more than
$1,500 when offset by the $900 paid by appellant.  Tex.
Pen. Code Ann. '' 31.03(a)(3),
31.03 (e)(4)(A), & 31.08(d) (Vernon 1994 & Supp. 2002).  However, because we have rejected the first
argument, appellant=s argument must
also fail.  When viewed in the light most
favorable to the verdict, the evidence is sufficient to prove the value of the
three computers was greater than $1,500.








Finally, when we review the evidence not in the light most
favorable to the verdict, we see a conflict between the evidence offered by the
State, primarily through the testimony of Anderson, and the evidence offered by
appellant, primarily through his own testimony. 
By its verdict, the jury chose to give greater weight and credibility to
the State=s case.  While we have the authority to disagree with
this determination, we should not do so if our evaluation would not
substantially intrude upon the jury's role as the sole judge of the weight and
credibility of witness testimony.  Santellan,
939 S.W.2d at 164.  As noted above, in
these situations, the jury's verdict is generally regarded as conclusive.  Van Zandt, 932 S.W.2d at 96.  After our careful review of the record
evidence in a neutral light, we are unable to hold that the jury=s verdict is
against the great weight of the evidence presented at trial so as to be clearly
wrong and unjust.  Clewis, 922
S.W.2d at 134.

For these reasons, the first and second points of error are
overruled.

II.  Motion to Quash
Indictment.

The indictment alleged, in pertinent part, that appellant
appropriated the computers Awith the intent
to deprive@ Anderson of
the property.  Prior to trial, appellant
moved to quash the indictment, arguing it was defective in failing to allege
which of the statutory meanings of deprive the State would rely upon.  The trial judge overruled the motion.  That ruling forms the basis of the third
point of error.








An accused in a criminal case is guaranteed the right to demand
the nature and cause of the action against him. 
DeVaughn v. State, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988).  The charging instrument itself must convey
adequate notice from which the accused may prepare his defense.  Id. 
As a general rule, a charging instrument which tracks the language of a
criminal statute possesses sufficient specificity to provide a defendant with
notice of a charged offense.  State v.
Edmond, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996); DeVaughn, 749
S.W.2d at 67.  However, there is one well
recognized exception to this general rule: when the statute possesses
statutorily‑defined, alternative methods of committing an offense, then
upon timely request, a defendant is entitled to an allegation of which
statutory method the State intends to prove. 
Edmond, 933 S.W.2d at 129-30 (and cases cited therein).

The penal code defines deprive as:  (A) to withhold property from the owner
permanently or for so extended a period of time that a major portion of the
value or enjoyment of the property is lost to the owner; (B) to restore
property only upon payment of reward or other compensation; or (C) to dispose
of property in a manner that makes recovery of the property by the owner
unlikely.  Tex. Pen. Code Ann. ' 31.01(2)
(Vernon Supp. 2002).  Because deprive has
three statutorily‑defined alternative methods, the trial judge abused his
discretion in overruling appellant=s motion to
quash the indictment.  Olurebi v.
State, 870 S.W.2d 58, 62 (Tex. Crim. App. 1994); Hoover v. State,
707 S.W.2d 144, 149 (Tex. App.BHouston [14th
Dist.] 1986, on reconsideration, 736 S.W.2d 158 (Tex. App.BHouston [14th
Dist.] 1987, pet. ref'd).








A defect of form does not render an indictment insufficient
unless the defect "prejudice[s] the substantial rights of the
defendant."  Tex. Code Crim. Proc. Ann. art. 21.19 (Vernon 1989).  Article 21.19 has been interpreted so that
when the right to adequate notice of the charges from the face of the
indictment is violated, that right is substantial only if the particular defect
of notice harmed the defendant.  Adams
v. State, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986).  This inquiry is a question of law.  Janecka v. State, 823 S.W.2d 232, 236
(Tex. Crim. App. 1990) (quoting Adams, 707 S.W.2d at 903).  The State argues there was no harm to
appellant.  We are constrained to
agree.  There is no showing from the
record that appellant would restore the property only upon payment of reward or
other compensation.  Tex. Pen. Code Ann. '
31.01(2)(B).  And there is no showing
appellant would have disposed of the property in a manner to make recovery
unlikely.  Id. at '
31.01(2)(C).  Therefore, the only
definition applicable to the instant case was section 31.01(2)(A).  Moreover, this was the only definition
provided in the jury charge. 
Accordingly, we hold appellant had the ability to prepare a defense and
was not impacted by the lack of notice in the indictment.  Hoover v. State, 736 S.W.2d 158, 159
(Tex. App.BHouston [14th
Dist.] 1987, pet. ref'd).  The third
point of error is overruled.

III.  Failure to Explain
Unlawful Appropriation.

The fourth point of error contends the trial judge committed
egregious error by failing to explain when appropriation of property is
unlawful.  The abstract portion of the
charge defined appropriate under section 31.01(4)(B) of the Penal Code.[2]  However, the charge did not provide a
definition of unlawful appropriation. 
Section 31.03(b) of the Penal Code provides:

Appropriation
of property is unlawful if:

 

(1) it is without the owner's effective consent;

 

(2) the property is stolen and the actor appropriates the
property knowing it was stolen by another; or

 

(3) property in the custody of any law enforcement agency was
explicitly represented by any law enforcement agent to the actor as being
stolen and the actor appropriates the property believing it was stolen by
another.

 








Tex. Pen. Code Ann. ' 31.03(b). 
The application paragraph authorized the jury to convict upon a finding
that appellant did Aunlawfully,
appropriate, by acquiring or otherwise exercising control over property, namely
three computers. . . .@

In reviewing jury charge error, we undertake a two‑step
process.  Hutch v. State, 922
S.W.2d 166, 170‑71 (Tex. Crim. App.1996). 
First, we must determine whether error exists in the charge.  Id. at 171.  Second, we review the record to determine
whether sufficient harm was caused by the error to require reversal of the
conviction.  Id.  In the instant case, we find error exists in
the failure to include the definition of unlawful appropriation of section
31.03(b)(3).  Since there was no
objection to this error, we must determine whether appellant suffered egregious
harm.  Id.

In determining whether error is egregious, we look at the
actual degree of harm, in light of (1) the entire jury charge, (2) the state of
the evidence, (3) the argument of counsel, and (4) any other relevant
information revealed by the trial record as a whole. Id.  As the Hutch court stated:  "[E]rrors which result in egregious harm
are those which affect the very basis of the case, deprive the defendant of a
valuable right, or vitally affect a defense theory." Id. (quoting Almanza
v. State, 686 S.W.2d 157, 172 (Tex. Crim. App. 1985) (op. on reh'g))
(internal quotation marks deleted).  As
noted above, the application paragraph required the jury to find appellant
unlawfully appropriated the property before convicting.  The state of the evidence has been recounted
in part I of this opinion and need not be restated here.  The arguments of counsel are instructive on
this issue.  Appellant argued as follows:








One of the
things that the Judge instructs you as an element is appropriate.  It means to acquire, or otherwise exercise
control [over] the property, other than real property.  In this case, you have, the State is saying,
that [appellant] took control over three computers.  Juxtapose that, if you will, to the
evidence.  The evidence that we heard was
that three computers remained in the area from Mr. Kahn.  They were never taken, never touched, never
taken by [appellant].  So, we know he
didn=t appropriate
them.  Under the law, if he didn=t appropriate
them, you have to find him not guilty. 
That=s an
element.  

 

Appellant
also argued the evidence did not prove an intent to deprive of possession.  Finally, we are not aware of any other
relevant information revealed by the trial record that should be included in
this analysis.

When these four factors are considered, we hold the failure to
include the appropriate definition of unlawful appropriation did not result in
egregious harm.  We are convinced
appellant=s defensive
strategy rested on the theory that he did not appropriate or possess any of the
computers.  Accordingly, the missing
definition did not affect the very basis of the case, deprive the defendant of
a valuable right, or vitally affect a defense theory.  The fourth point of error is overruled.

IV. Effective Assistance of Counsel.








The fifth and sixth points of error contend trial counsel
provided ineffective assistance in failing to request an instruction on the
lesser offense of class A theft, and by not requesting an instruction pursuant
to section 31.08(d) of the Penal Code, respectively.  The standard by which we review a claim of
ineffective assistance of counsel was established in Strickland v.
Washington, 466 U.S. 668, 684 (1984). 
Under this standard, the reviewing court must first determine whether
trial counsel's representation fell below an objective standard of
reasonableness under prevailing professional norms.  Id. at 687-88.  If counsel's performance fell below this
standard, the reviewing court must decide whether there is a "reasonable
probability" the result of the trial would have been different but for
counsel's deficient performance.  Id.
at 694.  A reasonable probability is a
"probability sufficient to undermine confidence in the outcome."  Id.

We must begin with the threshold determination of whether trial
counsel's conduct was, in fact, deficient. 
Cardenas v. State, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000); Fuentes
v. State, 991 S.W.2d 267, 272‑73 (Tex. Crim. App. 1999). Therefore,
the question is whether appellant was entitled to the complained of missing
instructions.  We answer this question in
the affirmative.  There was some evidence
that appellant, if guilty, was guilty only of the lesser offense.  Rousseau v. State, 855 S.W.2d 666, 672‑73
(Tex. Crim. App. 1993).  Additionally, there
is evidence that appellant gave consideration to obtain one computer.  Tex.
Pen. Code Ann. ' 31.08(d).








The fact that appellant would have been entitled to these
instructions does not end our inquiry under Strickland=s first
prong.  Even if the record reveals a
valid objection, motion or request was available to trial counsel, the failure
to undertake the complained of action may be attributable to sound trial strategy.  Strickland, 466 U.S. at 690.  This is true even in cases where counsel
failed to request an instruction on a lesser included offense to which the
defendant was entitled.  Lynn v. State,
860 S.W.2d 599, 603 (Tex. App.BCorpus Christi
1993, pet. ref'd).  Generally, the
appellate record is not sufficient to rebut Strickland's presumption that the
challenged action of trial counsel was the result of "sound trial
strategy." Strickland, 466 U.S. at 689.[3]  In light of this presumption, a substantial
risk of failure accompanies a claim of ineffective assistance of counsel on
direct appeal because the record is simply underdeveloped and cannot adequately
reflect the failings of trial counsel.  Thompson
v. State, 9 S.W.3d 808, 814 (Tex. Crim. App.1999).  When presented with such a record, appellate
courts will not indulge in speculation to find counsel's performance
deficient.  Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994).

In the instant case, the trial record does not reflect why
trial counsel did not request these instructions.  Additionally, this issue was not developed at
a motion for new trial hearing.  Thompson,
9 S.W.3d at 814.  In light of the record
before us, to hold counsel was deficient would require speculation on our
part.  Therefore, we are bound by Strickland=s presumption
that the failure to request these instructions was attributable to sound trial
strategy.  Strickland, 466 U.S. at
690.  The first prong of Strickland
has not been satisfied.  Accordingly, the
fifth and sixth points of error are overruled.

The judgment of the trial court is affirmed.

 

________________________

CHARLES
F. BAIRD  

Justice


 

 








Do not publish.

Tex. R. App. P. 47.3.

 

Opinion
delivered and filed

this 3rd day of
July, 2002.        

 

 

 











[1]Former
Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the
Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov=t Code Ann. '
74.003 (Vernon 1998).





[2]  AAppropriate@
means to acquire or otherwise exercise control over property other than real
property.  Tex. Pen. Code Ann. '
31.01(4)(B).





[3]  We have
recognized exceptions to this presumption. 
Stone v. State, 17 S.W.3d 348, 350 (Tex. App.BCorpus
Christi 2000, pet. ref'd).