COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00052-CR

 

 


 
 
 Craig Arlen Murrah
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 213th District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I. 
Introduction

In
five issues, Appellant Craig Arlen Murrah appeals his
official oppression conviction.  We reform the trial court’s judgment and
affirm as reformed.

II.  Factual and Procedural History

Murrah was
a Fort Worth police officer when he was charged by indictment with official
oppression.[2]
 The indictment contained ten paragraphs, but before trial began, the
State waived paragraphs 1, 2, 5, 6, 7, and 10, and it deleted some language
from paragraphs 8 and 9.  The language in the jury charge, however,
reflects only paragraphs 3 and 4.  The jury found Murrah
guilty “as charged in the indictment,” and the trial court’s judgment states
that Murrah was convicted of paragraphs 3, 4, 8, and
9.  The trial court assessed punishment at six months’
confinement and a $2,000 fine.  This appeal followed.

III.  Judgment

In
his first, second, and fifth issues, Murrah complains
that the judgment incorrectly reflects that he was convicted of official
oppression as alleged in paragraphs eight and nine because the jury was never
charged on these paragraphs.  The State agrees, and the record reflects
this.  Therefore, we sustain Murrah’s first,
second, and fifth issues and reform the judgment to reflect that Murrah was convicted of official oppression on paragraphs
three and four.

IV.  Sufficiency of the Evidence

In
his third issue, Murrah argues that the evidence is
factually insufficient to support his conviction as alleged in paragraphs three
and four of the indictment.[3] 
However, the court of criminal appeals has recently overruled Clewis v. State, 922 S.W.2d
126 (Tex. Crim. App. 1996), upon which the factual sufficiency standard of
review is based, and decided “that the Jackson v. Virginia
legal-sufficiency standard is the only standard that a reviewing court should
apply in determining whether the evidence is sufficient to support each element
of a criminal offense that the State is required to prove beyond a reasonable
doubt.”  Brooks v. State, 323 S.W.3d
893, 895 (Tex. Crim. App. 2010).  In the interests of justice, we
will review Murrah’s third issue under Jackson.

A. 
Standard of Review

In our due-process review of the sufficiency
of the evidence to support a conviction, we view all of the evidence in the
light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App.
2007).

This
standard gives full play to the responsibility of the trier
of fact to resolve conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton,
235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and
credibility of the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), cert. denied,
129 S. Ct. 2075 (2009).  Thus, when performing an evidentiary sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder. 
Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007).  Instead, we Adetermine whether
the necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@  Hooper v.
State, 214 S.W.3d 9, 16–17 (Tex. Crim. App.
2007).  We must presume that the factfinder
resolved any conflicting inferences in favor of the prosecution and defer to
that resolution.  Jackson, 443 U.S. at 326, 99 S.
Ct. at 2793; Clayton, 235 S.W.3d at 778.

B. 
Evidence

Corinna Mascorro testified that she was with Paul Botello, her children’s father, on the night of June 21,
2007.  Around 1 a.m., they drove to a nearby park and were engaging in
sexual intercourse when another car pulled up.  When they saw the
headlights, they hurried to find their clothing.  Someone—a police officer—knocked
on the car window and asked for their identification; Botello
could not find his initially, but Mascorro gave the
officer hers.  The officer asked her to step out of the car, and she asked
if she could put her clothes on.  He said no.

Mascorro emerged
from the vehicle naked from the waist down; she grabbed Botello’s
shirt and put it around her waist.  The officer escorted Mascorro to his patrol car and put her in the back seat
while he ran warrant checks.  He asked her whether she knew she could go
to jail for having sex in the park.  Mascorro
testified that she started crying when she thought about going to jail and
leaving her children.  The officer kept asking her if she had learned her
lesson.

Botello
testified that he was nervous when the officer approached their car because he
knew he had outstanding warrants.  After the officer had Mascorro step out of the car and moved his vehicle behind
theirs,[4]
Botello could not see anything.

The
officer had Mascorro get back out of his patrol car
and told her to turn around and put her hands behind her back.  Botello’s shirt, which she had been holding, fell to the
ground.  Mascorro testified that at that point,
she thought that the officer was going to handcuff her and take her to jail.
 Instead, he told her to bend down and said that he did not think she had
learned her lesson.  Then he hit her with his hand, hard, “like four or
five times on [her] bare butt.”  She asked him to stop, and he told her,
“Quit being a drama queen.”

Afterwards,
the officer nudged Mascorro to go back to her car and
returned her identification to her.  She picked up Botello’s
shirt, walked back to her car, and told Botello what
had happened.  Enraged, Botello jumped out of
the car to confront the officer, but “the cop drove off too fast.”  They
followed the officer, calling 911 while in pursuit.  When the officer
pulled into a police station, they obtained his patrol car number and then
drove back to Botello’s house.

Botello
stated that he stepped out of the car when he heard Mascorro
crying.  He approached the patrol car when the officer released Mascorro’s hands, which were bound behind her back, and Mascorro ran towards him.  As Botello
approached, the officer—whom Botello identified as Murrah—put his hand on his weapon and told him not to take
a step closer, then got into the patrol car and took off.  Botello’s 911 call was admitted in
evidence and published to the jury.  During cross-examination, Botello admitted that the first patrol car number that he
gave the 911 dispatcher was different from the second time he gave the number,
from “1059” to “1092.”

A
police supervisor, Corporal Lawrence Blanchard, subsequently called and spoke
with both Mascorro and Botello.
 When Corporal Blanchard did not follow up with them within two or three
weeks, Mascorro and her father went to the downtown
police station and spoke with Sergeant Pablo Criado.
 Mascorro provided Sergeant Criado
with a written statement, and he recorded his interview with her and showed her
a photographic lineup, from which she identified Murrah.

Sergeant
Criado described Mascorro’s
and her father’s demeanors when they walked into the station to make the
complaint:  “Crying, she was crying.  The father was really quiet,
and you could read his body language that he was really upset and—to the point
where they apprised me of the fact that they were looking for this officer.”
 He interviewed Botello the next day and
observed that their stories were consistent.

Corporal
Blanchard testified that at the time of the incident, he was Murrah’s supervisor.  In the early morning hours of
June 22, 2007, he received information that he “needed to call a citizen in
reference to a complaint against . . . one
of [his] officers.  He spoke with Botello and Mascorro and then called Murrah.
 Murrah told him that he had had contact with Mascorro and Botello but denied
their allegations.

Murrah’s
“Officer’s Daily Activity Report” for the date of the offense was admitted
during Corporal Blanchard’s testimony.  The report indicated that at 1:13
a.m., Murrah self-initiated an investigation.
 It also indicated that Murrah’s vehicle that
night was #1092.  Corporal Blanchard testified that Murrah’s
vehicle was equipped with video equipment but that he did not recall reviewing
the video.  He reported the complaint about Murrah
to his supervisor and then followed up with Botello,
although it was “hit and miss.”  The complaint was addressed again two or
three weeks later when Mascorro or Botello brought it to internal affairs.

Sergeant
William Hix, who was working in internal affairs when
Mascorro made her complaint, testified about police
procedures taught for opposite sex encounters.  He stated that if an
officer encountered a nude or partially nude female, that person would be
allowed to either get clothed or, if no clothing was available, to find
something to cover herself up with, and that he “would suggest the first thing
[an officer] should do is call somebody to come out there . . . to have another
officer . . . to ensure that nothing unusual occurred.”  He explained that
the Fort Worth police have an 800-page general orders book that includes a code
of conduct detailing the behavior expected of an officer.  Under the code
of conduct, officers are not allowed to mock, taunt, or humiliate those they
come into contact with in the community.  He replied, “No, never,” when
asked whether there was ever a time when officers are allowed to lay hands on
detainees to enforce their own punishment as they see fit.  And he stated,
“I believe so,” when asked whether “the manner and way [Murrah]
treated [Mascorro] in spanking or striking her
several times on her bare buttocks” was something that Murrah
was taught was unlawful.

Sergeant
Hix testified about Murrah’s
patrol vehicle’s computer “CAD” log from June 22, 2007, which was entered in
evidence.  It reflected that at 1:17 a.m., Murrah
requested from the dispatcher an investigative call—which can be anything more
than a mere traffic stop—at 1500 East North Side Drive, approximately a mile
away from the park.  The request took him “out of service,” i.e.,
unavailable for other calls.  Sergeant Hix
stated that when an officer is conducting an investigation or detaining a
person, he is acting under the color of his employment as a police officer and
acting in an official capacity.

The
next CAD entry was for 1:19 a.m. and showed that Murrah
checked Mascorro’s and Botello’s
basic information.  Sergeant Hix noted that Murrah’s check on Mascorro’s and Botello’s personal information was unusually quick, which
raised a red flag for him.  Murrah’s daily
activity report confirmed that he had made contact with Mascorro
and the time of the contact, but there was a “significant difference between
the address that he documented to what they reported.”  He testified that
he never looked for CAD logs for patrol unit #1059 but that, based on his investigation, unit #1059 was not on duty that evening.
 And he testified that Corporal Blanchard told him that “there was no
videotape or it wasn’t captured on video” or that nothing relevant to the
investigation was captured on video.

C. 
Analysis

A
public servant acting under color of his office or employment commits an
offense if he intentionally subjects another to mistreatment that he knows is
unlawful.  Tex. Penal Code Ann. § 39.03(a)(1)
(Vernon 2009).  “Unlawful” means criminal or tortious
or both.  Id. § 1.07(48) (Vernon 2009). 
A public servant acts “under color of his office or employment” if he acts or
purports to act in an official capacity or takes advantage of such actual or
purported capacity.  Id. § 39.03(b). 
The indictment alleged in paragraph 3 that Murrah
mistreated Mascorro by holding her hands behind her
back and causing her to bend over while she was partially clothed or naked,
which he knew was unlawful, and in paragraph 4 that Murrah
mistreated Mascorro by spanking or striking her with
his hand on her bare buttocks, which he knew was unlawful.  See State v. Edmond, 933 S.W.2d
120, 127 (Tex. Crim. App. 1996) (“[A] defendant charged under [this section]
must mistreat another and must also know that his conduct is criminal or tortious.”).

The
testimony at trial reflected that Murrah was a public
servant—a police officer—acting under color of his office or employment when he
made an investigative stop.  Viewed in the light most favorable to the
prosecution, the evidence in the record supports the jury’s finding that Murrah held Mascorro’s hands
behind her back and caused her to bend over while she was partially clothed and
that he spanked or struck her with his hand on her bare buttocks.  And the
jury could have inferred from the evidence that Murrah
knew this conduct was unlawful.  See Laster
v. State, 275 S.W.3d 512, 521 (Tex. Crim. App.
2009) (stating that circumstantial evidence is reviewed under the same standard
as direct evidence).  Therefore, we conclude that the evidence is legally
sufficient to support Murrah’s conviction for
official oppression as alleged in paragraphs 3 and 4 of the indictment, and we
overrule his third issue.

V. 
Conclusion

Having
sustained Murrah’s first, second, and fifth issues
and overruled Murrah’s remaining dispositive issue,
we reform the trial court’s judgment to delete paragraphs 8 and 9 and to
reflect his conviction for “official oppression (paragraphs three and
four).”  We affirm the trial court’s judgment as reformed.

 

 

PER CURIAM

 

PANEL: 
MCCOY, J.; LIVINGSTON, C.J.; and GABRIEL, J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 10,
2011











[1]See
Tex. R. App. P. 47.4.





[2]Because
Murrah challenges the sufficiency of the evidence to
support his conviction, we will address the evidence below.





[3]Murrah also challenges the factual sufficiency of the evidence
to support his conviction as alleged in paragraphs eight and nine of the
indictment but, based on our resolution of his first, second, and fifth issues,
we need not address this issue.  See Tex. R. App. P. 47.1.





[4]Mascorro and Botello stated that
during the incident, the officer changed the position of his patrol car so that
it was behind their vehicle.