

# NUMBER 13-17-00171-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ANTHONY MOLINA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

### On appeal from the 214th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

## Before Justices Contreras, Longoria, and Hinojosa
## Memorandum Opinion by Justice Hinojosa

Appellant Anthony Molina appeals a conviction of burglary of a habitation. In one

issue, Molina contends that the evidence is legally insufficient to support a finding that he

had the requisite intent under section 30.02(a)(1) of the Texas Penal Code to commit or

attempt to commit an aggravated assault when he entered the home in question. *See*

TEX. PENAL CODE ANN. § 30.02(a)(1) (West, Westlaw through 2017 1st C.S.). We affirm.

## I. BACKGROUND

Our review of the record reveals that, shortly after the two met, Molina believed that he and Monica Alaniz were in a serious romantic relationship. However, Monica wanted to distance herself from Molina, and she told Molina that she was going out of town when in fact she hid at the home of her son Patrick Alaniz. Monica's absence coupled with Molina's emotions prompted him to seek an altercation with Patrick. It is undisputed that on April 30, 2016, at 1:30 a.m., Molina broke down the back door of Patrick's house. At that time, Monica, Patrick, and Patrick's girlfriend Alexa Gonzalez were sleeping on the second floor.

### A.   Monica's Testimony

Monica recalled waking up to a loud noise. She asked Patrick, who was sleeping in the master bedroom with Alexa, what was going on. Patrick answered that Molina had entered the house. Monica was terrified by Molina's entrance into the home and his yelling "I'm coming for you Tony," which was Patrick's nickname. Monica got out of bed, looked down the second-floor hallway, saw Patrick near the stairway, and heard Molina walking up the stairs.

Monica then saw and heard Patrick fire several shots from his handgun down the stairway. While retreating to the master bathroom adjoining Patrick's bedroom, Monica saw that Alexa was sitting on the bed and completely in shock. Monica hid in the master-bathroom closet and heard more gunshots. Patrick came into the master bathroom, seemingly out of ammunition. Molina apparently followed Patrick, and he shot

2

down the master-bedroom door. She saw Molina pointing a shotgun at her. Next, Monica saw "fire" from Molina's shotgun and her arm felt like it "exploded." Patrick told Molina, "you killed my mom, Anthony."

After sustaining the shotgun wound, Monica jumped out a second-floor window and ran away from the house. As she escaped, Monica heard more gunshots and then heard Molina tell the police to "Back off." After Molina fled, Monica emerged from some bushes where she had been hiding. She was transported by ambulance to a hospital for treatment.

## B.    Patrick's Testimony

Patrick recalled that Molina used an axe to break down the back door to his home. From his bedroom, Patrick heard Molina discharge a firearm as he roamed the first floor of the house. Patrick grabbed a handgun and ran to the stairway. There, he saw Molina at the bottom of the stairs and heard Molina screaming his name. According to Patrick, Molina yelled that he was going to kill him. Molina pointed his firearm at Patrick and fired it. Patrick returned gun fire. He then retreated to his bathroom, where he heard Monica instruct Alexa to call the police.

While in his bathroom, Patrick tried but failed to reload his gun. Molina then shot open the door to Patrick's bedroom as Patrick and Monica hid in the master bathroom. He saw Molina point the gun at Monica and shoot. Patrick recalled that Monica's arm looked like it had "exploded." Then, he, Monica, and Alexa jumped out of an upstairs window.

## C.    Molina's Testimony

3

Molina acknowledged entering the house with a shotgun, though he insisted that he did not mean to harm anyone. Instead, Molina testified he was suicidal and entered the house in the manner that he did and with a shotgun to "entice" Patrick to kill him.

As Molina recalled, Patrick was standing in front of the back door when Molina entered the house. When Patrick saw Molina's shotgun, he retreated and started shooting at him. As Molina climbed the stairs, he fired his shotgun in the air. Molina denied pointing his shotgun at Patrick and reiterated that he never intended to harm Patrick.

When Molina entered Patrick's bedroom, he did not see Alexa on the bed. Instead, Molina was drawn to a light in the master bathroom. He denied seeing either Monica or Patrick immediately. Patrick shot at Molina as he approached the master bathroom, and this time, a bullet hit Molina's face. Molina stated that he aimed his shotgun high and off center and fired it into the bathroom. Molina then left the house, entered his car, and drove away. He denied seeing Monica in the house the night of the episode or even knowing she was in the house. He testified that he believed she was in Austin.

## D. The Arrest and Trial

Officer John Paul Ghezzi responded to a call of "shots fired" and arrived on the scene a couple of minutes after receiving the call. Ghezzi assessed Monica's arm at the scene, and he believed her wounds were caused by a shotgun blast. Police arrested Molina as he attempted to flee in his vehicle.

A grand jury indicted Molina on four counts. Count 1, the only count in dispute on

4

appeal, alleges that on or about April 30, 2016, Molina:

> intentionally or knowingly enter[ed] a habitation, without the effective consent of PATRICK ALANIZ, the owner thereof, and attempted to commit or committed the felony offense of AGGRAVATED ASSAULT against MONICA ALANIZ, and [Molina] did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission [of] the burglary[.]

At trial, the abstract portion of the jury charge stated that "a person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation . . . with the intent to commit a felony, theft, or an assault." The application portion of the jury charge instructed the jury to find Molina guilty of burglary of a habitation to commit a felony if the jury believed that Molina intentionally or knowingly entered the habitation of Patrick without his effective consent and attempted to commit or committed the felony offense of aggravated assault against Monica and that Molina used a deadly weapon during the commission of the burglary.

The jury found Molina guilty on Count 1 and assessed a punishment of twenty years' confinement and a fine of $10,000. The trial court rendered judgment in accordance with the jury's verdict. This appeal followed.

## II. Discussion

Molina contends that the evidence is legally insufficient to support a finding that he had the requisite intent to commit or attempt to commit an aggravated assault on Monica when he entered Patrick's home.

### A. Standard of Review and Applicable Law

When examining the legal sufficiency of the evidence, we consider the combined and cumulative force of all admitted evidence in the light most favorable to the conviction

5

to determine whether, based on the evidence and reasonable inferences therefrom, any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015). In doing so, we give deference to the responsibility of the jury as factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from facts. *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd).

We measure the legal sufficiency of the evidence against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (internal quotation marks omitted).

The law as authorized by the indictment must be the statutory elements of the offense of burglary as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). That is to say, the hypothetically correct jury charge could not simply quote the language of the statute; rather, it must track the elements of the law specifically alleged by the indictment. *Id.* at 404–05.

A person commits burglary if, without the effective consent of the owner, the person: "(1) enters a habitation . . . with intent to commit a felony, theft, or an assault; or

6

. . . (3) enters a . . . habitation and commits or attempts to commit a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02(a)(1), (3).

## B.    Discussion

Molina begins his legal sufficiency challenge by contending that the indictment fails to specify which subsection of section 30.02 he was charged under. However, the indictment specifically charges Molina with entering Patrick's house without permission and committing the felony of aggravated assault on Monica with a firearm. This indictment tracks the elements of section 30.02(a)(3) of the penal code. *See id.* § 30.02(a)(3). Texas courts have long held that indictments that track the language of a criminal statute possess sufficient specificity to provide a defendant with notice of a charged offense in most circumstances. *State v. Edmond*, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996) (en banc). Therefore, the indictment was sufficient to put Molina on notice that he was being prosecuted under section 30.02(a)(3).

Next, Molina contends that the jury was charged with determining guilt under section 30.02(a)(1) instead of (a)(3). It is true that the abstract portion of the jury charge, which sets out the law, tracks the language of section 30.02(a)(1). But, the application portion of the jury charge correctly tracks the elements of section 30.02(a)(3). Molina urges us to evaluate the sufficiency of the evidence based on the abstract portion of the jury charge, not the application portion. Molina's second legal sufficiency argument is misplaced.

The principles laid out in *Malik* and its progeny direct us to measure the legal sufficiency of evidence against the hypothetically correct jury charge instead of the charge

7

actually given.[1] *See Grissam v. State*, 267 S.W.3d 39, 40 (Tex. Crim. App. 2008) (citing *Malik*, 953 S.W.2d 234). And, according to *Curry*, the hypothetically correct jury charge has its basis in the indictment. 30 S.W.3d at 405. Here, the indictment charges Molina with entering Patrick's home without permission and committing aggravated assault against Monica with a firearm. These are the elements that would be contained in the hypothetically correct jury charge. In other words, a hypothetically correct jury charge would instruct the jury that, to find Molina guilty, the jury must find that he intentionally or knowingly entered the house of Patrick without his effective consent, and committed or attempted to commit the felony of aggravated assault against Monica and that he exhibited a deadly weapon during the commission of the burglary. *See* TEX. PENAL CODE ANN. § 30.02(a)(3).

The thrust of Molina's legal sufficiency challenge is that he lacked the requisite intent to commit an assault on Monica when he entered Patrick's home. Even if there was no evidence of Molina's intent to harm Monica when he entered Patrick's home, there is legally sufficient evidence that he committed an aggravated assault on Monica. Patrick and Molina testified that Molina broke into Patrick's home without his effective consent, satisfying the initial element to the offense of burglary. *See* id. § 30.02(a). A person commits aggravated assault when he intentionally, knowingly, or recklessly causes bodily injury to another and uses or exhibits a deadly weapon during the commission of the assault. *Id.* §§ 22.01, 22.02. Intent can be inferred from the extent

---

[1] We do not here hold that the court made an erroneous jury charge. Rather, the *Malik* framework controls sufficiency of the evidence analysis even in the absence of a jury charge error. *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001)

of injuries to the victim and the method used to inflect the injuries. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (en banc). Molina admitted to using a shotgun during the episode. As for the bodily injury element, both Patrick and Monica recalled Monica's arm looking and feeling like it had "exploded" upon Molina firing his shotgun into the master bathroom. Moreover, Monica's medical records corroborate Patrick and Monica's testimony regarding the seriousness of her injury. Although Molina testified he did not intend to hurt anyone but himself, the jury was free to disbelieve him. *See Johnson*, 419 S.W.3d at 671.

We conclude that the evidence is legally sufficient to convict Molina under section 30.02(a)(3) of the penal code. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). We overrule Molina's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
28th day of June, 2018.

9